JAMES WALKER v. C. P. MEBANE and others.

### Mortgage—Foreclosure Proceeding—Issues.

1. Where a mortgage of land is made to one to secure a debt, and a third party, by an arrangement with the mortgagor (who executes to him a second mortgage on same land), pays the debt in his notes which are accepted by the mortgagee, which notes are afterwards assigned to the plaintiff; *Held,* in an action to foreclose the mortgage and subject the land to the payment of said notes, the plaintiff is not entitled to recover. The mortgage debt being thus discharged, the mortgage deed, though not satisfied upon the register's books in pursuance of THE CODE, §1271, is in equity no longer operative; and if the parties intended to hold the land as security for the said notes, a new mortgage should have been executed for that purpose.

2. *Held further:* The circumstance that there was a difference between the exact amount of the notes used in payment of the debt and those originally secured by the first mortgage is of no force, since the mortgagee accepted the former in discharge of the debt.

3. Where, upon the issues submitted in such case, the jury find the debt was paid, but that the mortgage was not satisfied, *it was held* that the issue to which the latter part of the verdict was responsive, and the finding upon

it, are immaterial. The fact of payment being found, the law determines the status of the mortgage deed.

4. Nor can the withdrawal of the answer of the defendant mortgagor, allowing judgment to be entered for the plaintiff, have the effect of defeating the rights of the third party to whom the second mortgage had been executed under the said arrangement.

(*Wall* v. *White*, 3 Dev., 105; *Powell* v. *Brinkley*, Busb., 154; *Elliott* v. *Wyatt*, 73 N. C., 55, cited and approved).

CIVIL ACTION to foreclose a mortgage tried at June Term, 1883, of NEW HANOVER Superior Court, before *McKoy, J.*

On the 8th day of January, 1871, Maria A. Mebane was indebted to the Mechanics' Building and Loan Association in the sum of $3,403. This debt was created with the assent of her husband, James A. Mebane, and to secure the payment thereof the said Maria A., with the like assent of her husband, executed to this corporation a mortgage of a lot or parcel of land situate in the city of Wilmington. This mortgage contained a power of sale, authorizing the mortgagee to sell the land in the contingencies therein specified.

In the month of January, 1874, the defendant, Charles P. Mebane, assumed the payment of all such sums of money as should thereafter be due from Maria A. Mebane to the said corporation, on account of the indebtedness and liabilities embraced by the said mortgage; and he executed to her a bond to indemnify and save her harmless as to any further payments of money on her part to the said corporation on account of the indebtedness secured by the mortgage. The corporation was not a party to this agreement between Maria and Charles Mebane, and had nothing to do with it.

At the same time the said James A. Mebane and Maria A., his wife, executed to the said Charles P. Mebane two promisory notes, one for $4,000 and the other for $3,521.37. The note for $4,000 was the supposed amount that would be due by Maria on account of the said mortgage debt, and it was given to indemnify Charles P. Mebane against whatever payments he might

make to the corporation on account of its claims against the said Maria, and to secure these two notes Maria A. Mebane and her husband executed to Charles P. Mebane *a second* mortgage upon the land embraced by the mortgage above mentioned.

Thereupon Charles P. began and continued to pay the monthly sums of money due to the said corporation, that under its mortgage were to be paid by Maria A. Mebane, until about July, 1875, when he ceased to pay, as he had agreed with Maria A. Mebane to do.

In February, 1876, however, Charles P. Mebane proposed to the corporation a "compromise" of the debt due to it from Maria A. Mebane. This proposition resulted in an adjustment and settlement of the debt, by which Charles P. agreed to give and did give to the company his three promissory notes, each for $416.67, dated March 1st, 1876, payable to the order of said corporation, one due in two months, one in four months and one in six months, with interest from date at the rate of eight per cent. per annum, and these notes were so executed and accepted by the corporation "as an adjustment and settlement of the amount claimed to be due from Maria A. Mebane."

James A. Mebane died intestate on the 17th of August, 1874, and the defendant, Edward Cantwell, became his administrator.

Charles P. Mebane assigned the notes given him, one for $4,000 and the other for $3,521.37, by Maria A. Mebane, to his wife, Martha C., in October, 1874.

The plaintiff purchased from the corporation for value and before maturity two of the notes given to it by Charles P. Mebane, and he seeks by this action to subject the land mortgaged by Maria A. Mebane and her husband to the said corporation to the payment of these notes.

The defendant, Charles P. Mebane, and his wife, Martha C., insist that the said mortgage executed by Maria A. and her husband to the corporation was paid and discharged by the said Charles P. Mebane at the instance of the said Maria A.; that the land mortgaged to him to secure the notes executed to him

by the said Maria A., with the assent of her husband, and which. he assigned to his wife, was duly sold to pay said debts.

Maria A. Mebane at first pleaded in this action, insisting in her answer that the mortgage she executed was paid and discharged. She afterwards, however, withdrew her answer and allowed judgment to go against her.

On the trial the following issues were submitted to the jury at the instance of the plaintiff:

1. "Did C. P. Mebane execute the three notes mentioned in the complaint?" To this issue the jury responded "Yes."

2. Did the Building Association assign and transfer two of the notes to the plaintiff for value received?" To this issue the jury responded "Yes."

3. "Was there any agreement that the notes executed by C. P. Mebane were to be in payment and satisfaction of the debt due by Maria A. Mebane to the Building Association, and of the mortgage securing the same?" To this issue the jury responded, "Yes, as to the debt; no, as to the mortgage."

The following issues were submitted to the jury at the instance of the defendant:

1. "What amount, if any, did Maria A. Mebane owe the Building Association on the first of March, 1876?" To this issue the jury responded "Nothing."

2. "Did Maria A. Mebane authorize C. P. Mebane to execute the three promissory notes executed by C. P. Mebane to the Building Association, and to bind her real estate under the mortgage executed by her to the Building Association for the payment of the same?" The jury answer "No."

3. "Did Maria A. Mebane at the time said notes were executed by C. P. Mebane to the Building Association, to-wit, 1st March, 1876, know that C. P. Mebane had executed the same?" The jury answered "No."

4. Did Maria A. Mebane execute to C. P. Mebane a mortgage dated January, 1874, to secure the amount of money C. P. Mebane might pay to the Building Association for her, on

account of her indebtedness to the association, and did she exe-
ecute two promissory notes payable to C. P. Mebane, one for
$4,000 and the other for $3,251.39, one of which, to-wit, the
one for $4,000, was the supposed amount that would be due by
Maria A. Mebane to the Building Association, and did C. P.
Mebane assign the said notes to Martha C. Mebane in October,
1874? The jury answer "Yes."

5. "Did Martha C. Mebane have any knowledge of the execu-
tion of those promissory notes for $416.67, each executed by C.
P. Mebane to the Building Association?" The jury answer
"No."

6. "Would the three notes for $416.67 each, executed by C.
P. Mebane to the Building Association, have been paid if pre-
sented for payment at maturity, and was C. P. Mebane at ma-
turity of said notes able to pay the same?" The jury answer
"Yes."

7. "Was all the interest of Maria A. Mebane in the tract of
land mentioned in the complaint sold since the pending of this
suit under a decree of the superior court of New Hanover
county for a foreclosure of a mortgage executed by M. A.
Mebane and J. A. Mebane to C. P. Mebane, dated 1st January,
1874?" The jury answer "Yes."

There was evidence introduced by both the plaintiff and the
contesting defendants tending to support the affirmative and
negative of these issues.

Upon the verdict of the jury upon the issues the court gave
judgment for the contesting defendant, whereupon the plaintiff
having excepted to sundry rulings of the court and the judg-
ment thus given by it, appealed to this court.

*Mr. George Davis*, for plaintiff.
*Mr. C. M. Stedman*, for defendant.

MERRIMON, J., after stating the case. The decision of a
single one of the numerous questions discussed before us, must

in our judgment be conclusive of this case, and we need not decide the others.

Passing by all questions as to the validity of the mortgage debt, and the mortgage executed by Maria A. Mebane to the defendant corporation, and any like question as to the validity of the notes which the plaintiff seeks to have paid by a sale of the real property embraced by that mortgage, we think the defendant Charles P. Mebane paid, and was fully authorized to pay and discharge, the mortgage debt mentioned, due to the defendant corporation, by executing to it his own three promissory notes, two of which the plaintiff now owns; and that the mortgage debt being discharged, the mortgage itself was in equity discharged, and has no operative effect for any purpose.

It appears to us very clearly, that in January, 1874, Charles P. Mebane agreed with Maria A. Mebane, for a valuable consideration, that he would pay and discharge her indebtedness, secured by the mortgage to the defendant corporation. He "assumed," obliged himself to her, to pay this indebtedness and executed to her a bond of indemnity to that effect. This engagement was between the two last mentioned parties. The corporation was in no way a party to it; it continued to hold its debt and the mortgage to secure it, just as if the agreement had not been made.

Charles P. Mebane was thus fully authorized to pay and discharge the mortgage debt due to the corporation in such way, and for such valuable consideration as might be acceptable to the latter. He was not bound to pay it in a particular way, or pay the whole of it, if he could discharge it by paying a less sum. His obligation was to discharge it, and he had no further or other power or authority from Maria A. Mebane to do anything more about it.

At first, he paid portions—installments—of the debt he thus assumed to pay, as required by its terms, and as provided in the mortgage. At length, however, he failed to do so, and finally the corporation agreed with him to accept his three

promissory notes in discharge of the whole indebtedness of Maria A. Mebane secured by the mortgage the plaintiff alleges still to exist and seeks to foreclose. It appears that the notes were given and accepted as an adjustment and settlement of the whole, not simply a part, of the debt. All the evidence goes to prove this, and the jury expressly found that the notes were given and accepted in "payment and satisfaction" of the mortgage debt mentioned. There is nothing going to show that there was any reservation of right or advantage to the corporation, or Charles P. Mebane under the mortgage, as to the mortgage debt. It was absolutely discharged. He had authority, as we have seen, to discharge it, and he did so in a competent way, and in a way the corporation deemed advantageous to it.

It is suggested that the notes were not equal in amount to the full amount of the indebtedness of Maria A. Mebane, and that there was a balance. There seems to have been some question as to how much she really owed, growing out of the payments she had made, and the circumstances under which she made them. It was insisted that if she were allowed certain credits growing out of usury exacted from her by the corporation, the notes given by C. P. Mebane would be in amount equal to, if not greater than the balance she owed. But this is not at all material; because, no matter what was the exact amount of her debt, the corporation accepted, for causes and considerations satisfactory to it, the three notes of Charles P. Mebane in discharge of the balance of it.

The evidence, as well as the finding of the jury, leaves no doubt upon our minds that the debt to the corporation was, and was intended to be, absolutely discharged.

An essential effect and consequence of the discharge of the mortgage debt was the discharge of the mortgage itself. The debt alone gave it life, vigor and efficacy. The mortgage was incident to the debt, rested upon it, and when the purpose for which it was created was accomplished, it ceased to have effect. *Wall* v. *White*, 3 Dev., 105; *Powell* v. *Brinkley*, Busb., 154; *Elliott* v. *Wyatt*, 74 N. C., 55; 2 Jones on Mort., §§956, 972; 1 Pow.

on Mort., 145; Coot on Mort., 559; *Costin, Ex-parte*, 2 Johns' Eq., 505; *Knox* v. *Johnston*, 26 Wis., 41; *Merrill* v. *Chase*, 3 Allen, 339.

It appears in this case, that the legal right of redemption under the mortgage was lost, but the equitable right of redemption continued until the debt was paid. Regularly, the mortgagee ought to have acknowledged the satisfaction and discharge of the mortgage in the presence of the register of deeds, and he ought to have entered satisfaction on the margin of the record of the mortgage, and this entry ought to have been signed by the mortgagee; and this done as required by the statute, would operate as a deed of release, or reconveyance of the land embraced by the mortgage. THE CODE, §1271. Otherwise the mortgagee should have reconveyed the land by proper deed. It does not appear that there was such reconveyance in this case, but nevertheless, the discharge of the mortgage debt was a complete discharge in equity of the mortgage, and the mortgagor is entitled to have the legal title. 2 Jones on Mort., §§886, 972, 943, 946; 1 Pow. on Mort., 119a; *Marriott* v. *Handy*, 8 Gill., 31; 1 Jones on Mort., §355; *McNair* v. *Picotte*, 33 Mo., 55; *Perkins* v. *Stern*, 23 Tex., 561.

The case states that there was no evidence of any agreement on the part of the corporation to *release* the mortgage, on receiving the notes in discharge of the mortgage debt. Such agreement was wholly unnecessary: it followed as a legal, certainly as an equitable consequence, that the payment of the debt discharged the mortgage.

One of the directors of the corporation testified that it did not release or agree to release the mortgage, but retained it as a security for the notes given by Charles P. Mebane. He does not state that there was an affirmative or express agreement to this effect, nor does he state that the notes were not given and received in discharge of the debt. And the jury, while they found that the mortgage debt was paid, found also that the mortgage itself was not paid and satisfied.

The learned counsel for the plaintiff insisted on the argument

that the finding of the jury in respect to the payment of the debt and mortgage was contradictory and absurd, and must be rejected; that the court cannot take part of the finding and reject part, and it is said "how can it distinguish the proper from the improper finding"? He further insisted, that the findings of the jury in response to the issues submitted at the instance of the defendants strengthened this objection.

There is only a seeming absurdity. The material finding was as to the payment of the mortgage debt. So much of the third issue submitted at the request of the plaintiff as applied to the mortgage, separate and apart from the debt it secured, was immaterial and were surplusage, and ought not to have been incorporated into the issue submitted. Whether the mortgage was discharged or not was a question of law, with which the finding of the jury had nothing to do. The material and the only material inquiry was, was the debt paid? and whether it was or not, the law fixed the status of the mortgage. If the debt was paid, it was discharged; if the debt was not paid, it remained operative until it should be paid. As we have said, the debt was the life of the mortgage, and gave it vigor and efficacy.

And in the view we have taken of the case, the issues submitted to the jury at the instance of the defendant were unnecessary and immaterial, and did not reach the spirit and substance of the real matter at issue. Having reference to these issues, it was not material to inquire what sum of money Maria A. Mebane owed the corporation on the first of March, 1876, because, whether she owed much or little on that day, Charles P. Mebane had paid the debt, and that question was settled by the finding of the jury upon the plaintiff's third issue. Nor was it material to inquire whether or not she had authorized Charles P. Mebane to execute the *promissory notes* and continue the mortgage to secure them. The substantial question was, had she authorized him to pay her mortgaged debts without regard to whether he paid and discharged it in his own notes, or cash, or property, real or personal. Nor was it material that she should know on the first of March, 1876, that Charles P. Mebane had paid

her debt by giving his own notes. The material question was, had he paid the debt? Nor was it material to inquire whether or not she had executed to C. P. Mebane notes and a mortgage to secure him for his outlays in paying her debt to the corporation. It was of no concern to the plaintiff or to the defendants in this controversy whether she had not paid him or promised to pay him on that account—that was a matter exclusively between them. Nor was it material to inquire whether she knew of the execution of the three notes to the corporation by Charles P. Mebane—that was a matter between the corporation and him with which she had no concern. Nor was it material to inquire whether Charles P. Mebane paid the corporation the full amount of her debt. He engaged to discharge the debt and did so, and this only was material to her. Nor was it material to inquire whether the notes of C. P. Mebane referred to, would have been paid if presented at maturity, and if he was able to pay them at that time—that concerned the corporation. Nor was it material to inquire whether the interest of Maria A. Mebane in the tract of land, mentioned in the complaint, had been sold since the bringing of this action to pay her mortgage debt to Charles P. Mebane—this was a matter material only to themselves. These issues were all beside the case.

If the agents of the corporation supposed at the time they accepted the notes of Charles P. Mebane in discharge of the mortgage debt, that the mortgage, as separate from the debt, could be continued and substituted to secure the notes given by him to the corporation, they were mistaken as to the legal effect of the payment of the mortgage debt. The payment of the latter discharged the mortgage, and the corporation and Charles P. Mebane could not by arrangement and mere parol agreement infuse into it renewed life and efficacy, so as to make it secure the debt of Charles P. Mebane.

It does not certainly appear that he undertook to enter into such agreement; but if he did so, he had no authority from Maria A. Mebane, the mortgagor, to that effect. Indeed, any such agreement was not feasible. If it was intended to hold the

land as a security for the notes given by Charles P. Mebane to the company, a new mortgage ought to have been executed, and Maria A. Mebane should have joined in it, or some other method to create a lien should have been adopted.

There is no suggestion that the corporation assigned the mortgage debt to Charles P. Mebane, or that the mortgage debt was to remain undischarged until his notes should be paid. There is no intimation of any such agreement; on the contrary, as we have seen, the mortgage debt was absolutely discharged, and hence, also, the mortgage.

The debt and the mortgage having been discharged, Maria A. Mebane could not give renewed life and effect to them by withdrawing her answer in this action and allowing judgment to go against her in favor of the plaintiff. She could not thus change the legal status of the land and give advantage to the plaintiff. By allowing judgment to go against her, if the land remained hers, the docketing of the judgment would create a lien on it in favor of the plaintiff. If, however, she executed a second mortgage in favor of Charles P. Mebane, as alleged and admitted, she could not defeat his right by withdrawing her defense.

Whatever may be the rights of Maria A. Mebane and Charles P. Mebane and his wife Martha C., as among themselves, to the land, it is very clear that the plaintiff has no lien upon it, by virtue of the supposed mortgage he seeks by this action to foreclose; and therefore, while we do not pass upon the correctness of the particular rulings of the court below, we are satisfied that the court reached a correct conclusion, and therefore affirm its judgment.

No error.                                        Affirmed.