O. M. MAYO v. J. W. LEGGETT.

*Certiorari—Appeal—Estoppel—Possession—Notice.*

1. A *certiorari* will not be granted to correct the statement of the case on appeal as made up by the Judge, unless it is suggested that an unintentional mistake has been made, when the case may be remanded, or a *certiorari* granted, in order to give the Judge an opportunity, if he thinks proper, to correct the case.

2. Where the true owner of property holds out another as the owner, or allows a third party to appear to have the full power to dispose of it, and innocent third parties are thus led into dealing with such apparent owner, the real owner will be estopped, and the innocent purchaser protected, but in order for the estoppel to arise, the purchaser must have been misled by the owner.

3. Actual possession of land is notice to the world of any equity of the occupant.

4. Land was conveyed to a trustee to secure debts, and afterwards a third party took a conveyance of the equity of redemption and paid off the debts, and then sold the land to a person who took possession. The vendor then caused the trustee to sell the land under the terms of the deed, in order to get the legal title out of him; *It was held,* that a purchaser at such sale, with full notice of the facts, got no title, and no estoppel arose against the owner of the equity.

(*State* v. *Gay,* 94 N. C., 822; *State* v. *Miller,* Ibid., 902; *Ware* v. *Nisbet,* 92 N. C., 202; *Currie* v. *Clark,* 90 N. C., 17; *McDaniel* v. *King,* 89 N. C., 29; *Holmes* v. *Crowell,* 73 N. C., 613; *Melvin* v. *Bullard,* 82 N. C., 34; *Stith* v. *Lookabill,* 76 N. C., 467; *Isler* v. *Koonce,* 81 N. C., 378; *Walker* v. *Mebane,* 90 N. C., 259; cited and approved).

This was an ACTION for the recovery of land, tried before *Philips, Judge,* at Spring Term, 1886, of the Superior Court of the county of MARTIN.

A trial by jury was waived, and the facts found by the Judge are substantially as follows:

On the 18th of December, 1877, Thomas Jones was the owner of the land in controversy, and on that day conveyed the same by deed of trust to Joseph T. Waldo, to secure the payment of certain debts therein named to J. W. Sherrod and W. L. Sherrod, partners, with authority to sell upon their request. Thomas Jones died in 1880, leaving a will, which was duly proved, and by which he devises to his son, W. P. Jones, the land conveyed in the deed to Waldo.

On the 1st of April, 1880, W. P. Jones conveyed his equity of redemption in said land to J. D. Biggs & Co., for certain considerations mentioned in the conveyance, one of which was that J. D. Biggs & Co. should pay off and discharge the

notes to Sherrod & Bro. secured by the deed to Waldo. Immediately after the purchase by J. D. Biggs & Co., they obtained from J. W. Sherrod & Bro. indulgence upon the debts secured by the trust deed, till the 14th of October, 1880, when they paid the said debts and interest, and took from Sherrod & Bro. an assignment of the notes for value, by an endorsement, without recourse. At the time, J. D. Biggs & Co. intended a payment and discharge of said notes, and charged the sum paid Sherrod & Bro. and other sums paid by them, against the Thomas Jones land, in an account which they opened upon their books, and thereafter and until the trial, kept the said notes among their deeds connected with the Jones land, and not among their credits. On the first day of January, 1881, J. D. Biggs & Co., for the consideration of $3,250, conveyed to the defendant the land in controversy, who at once entered into actual possession, and so remained till the trial. On the ...... day of November, 1884, the trustee, Waldo, upon the written request of J. D. Biggs & Co., offered the land for sale at the court-house door in the town of Williamston, for cash, after thirty days' notice. The sale was advertised without the knowledge or consent of the defendant, who was not present and had no notice of the sale, but with the knowledge and consent of J. D. Biggs & Co. Before the bidding began, J. D. Biggs & Co. explained to the by-standers, plaintiff being present, that they had paid the notes secured by the trust, and had sold and conveyed the land to the defendant; that the sale was made only to get the legal title out of the trustee; and while the bidding was in progress, they made the same explanation to the plaintiff. The plaintiff purchased the land at $5,000, and about thirty days after the sale, paid the purchase money to the trustee and took a deed. After the sale and before the payment of the purchase money, J. D. Biggs & Co. explained again to the plaintiff the matter as above stated. About twelve months after the purchase of the land by the defend-

ant, he met Biggs and told him that he understood that the legal title was in the trustee, and he "wanted it out." Biggs subsequently saw the trustee, Waldo, and told him that he had taken in the Sherrod notes, and had sold the land to the defendant, and that he had concluded to sell it to get the legal title out of him. Waldo told Biggs, "that was the way to get the legal title out of him."

On the day after the purchase of the land by the plaintiff, the defendant met him, having heard that the land was sold on the day before, and said he supposed that the plaintiff had bought him out; that Biggs had the land sold to strengthen his title, and he hoped he and Biggs would fix it up.

Plaintiff consulted counsel, paid the money and took a deed; the trustee tendered the proceeds of the sale, less $250 retained for commissions, to J. D. Biggs & Co., which they refused to accept, on the ground that the sale passed no title; whereupon, the trustee returned the money, less the commissions, to the plaintiff, taking his note with surety thereto, to be paid when called for.

Upon the facts, judgment was rendered for the defendant, and plaintiff appealed.

*Messrs. W. B. Rodman, Jr.*, and *E. R. Stamps*, for the plaintiff.
*Mr. Jas. E. Moore*, for the defendant.

DAVIS, J., (after stating the facts). A motion was made in this Court in behalf of the plaintiff, based upon affidavits alleging errors in the finding of facts as stated by his Honor in the case sent up, for a writ of *certiorari* to have the finding of facts corrected in the several particulars mentioned in the affidavits. The motion is disallowed. When counsel cannot agree, the case as made up by the Judge "must be accepted as conclusively true, and the utmost which this

Court can do, upon the suggestion that an unintentional omission or mistake has occurred, is to remand the cause, or award the *certiorari* to give the Judge an opportunity, if *he thinks proper,* to make a correction." *State* v. *Gay,* 94 N. C., 822; *State* v. *Miller,* Ibid., 902; *Ware* v. *Nisbet,* 92 N. C., 202; *Currie* v. *Clark,* 90 N. C., 17; *McDaniel* v. *King,* 89 N. C., 29.

There is no suggestion that the Judge will probably make any corrections in this case; on the contrary, the correspondence set out in one of the affidavits, renders it quite certain that he will not, for he says, "I found the facts from the proofs," and in substance, that he cannot change them without consent.

The appeal can only be tried in this Court upon the case as settled by his Honor.

It was insisted for the plaintiff, that the defendant was estopped by his conduct, and could not assert any right to the land as against the plaintiff, and this was the only point relied on in this Court. In Bigelow on Estoppel, page 479, relied on by the plaintiff, the rule is stated to be, "that where one, by his word or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." This is well settled, and it is added on the same page, that "where the true owner of property holds out, or allows another to appear as the owner of, or as having the full power of disposition, and innocent third parties are thus led into dealing with such apparent owners, they will be protected." In such a case, the real owner is estopped from disputing the title of one who has been misled by his conduct; but that is not the case before the Court. We are unable to see, from the facts found, a single act or word of Leggett's, intended or calculated to mislead the plaintiff, or

16

that could mislead him. *Holmes* v. *Crowell*, 73 N. C., 613; *Melvin* v. *Bullard*, 82 N. C., 34.

The defendant was in *actual* possession of the land, and this was notice to the plaintiff of his equity—this is well settled. But in addition to the notice which the possession of the defendant gave, the plaintiff was fully advised by Biggs that the notes secured by the trust had been paid off, that the land had been sold to Leggett, and that the only purpose of the sale was "to get the legal title out of the trustee." There was nothing in what the defendant said to the plaintiff the day after the sale, that could be construed as an abandonment of his rights, or as a ratification of the purchase by the plaintiff; on the contrary, he told the plaintiff that "Biggs had the land sold to strengthen his title, and he hoped he and Biggs would fix it up."

In *Stith* v. *Lookabill*, 76 N. C., 467, READE, J., puts this case: "Land is conveyed to A in trust for B. A has the legal title, and conveys to C. B has the equitable title, and conveys to D. Who is entitled to hold the land in this case, C or D?" The answer is "very clearly D."

Waldo has the legal title and sells to Mayo; Biggs & Co. have the equitable title and sell to Leggett; clearly Leggett is entitled to hold.

This is well settled. Washbourn on Real Property, chapter 16, §§9 and 10; Jones on Mortgages, §§973 and 1799; *Isler* v. *Koonce*, 81 N. C., 378; *Walker* v. *Mebane*, 90 N. C., 259. The debts secured by the trust had been paid, and Mayo had knowledge of the fact, and the Court, instead of leaving the equitable owner to his remedy by action to redeem, will set aside the sale. This (says Jones, §1799,) is the rule in the English Courts, and some of the Courts of our States. Certainly, the debts having been paid, the legal title in Waldo or Mayo is but the shell, and the equitable title in Leggett is the substance.

There is no error. Let this be certified.

No error. Affirmed.