Ft. Madison Lumber Co. v. The Batavian Bank.

77 393
◦117 434

## THE FORT MADISON LUMBER COMPANY v. THE BATAVIAN BANK *et al.*

1. **Appeal:** REVERSAL: RESTITUTION OF PROPERTY TAKEN UNDER JUDGMENT. W. was the owner of stock in the plaintiff company, which he assigned as collateral security to the defendant bank, but which was afterwards claimed by the attaching creditors of W. The stock was not transferred to the bank on the company's books. The district court held that the bank had the superior right to the stock, and ordered it to be sold by the receiver in the case. It was sold accordingly to one, Bentley, but he was the bank's cashier, and the evidence (see opinion) shows that he acted as mere agent for the bank, which was the real purchaser. Bentley paid the purchase price to the receiver, and new shares of stock were issued to the bank. Upon an appeal to this court from the judgment of the district court, it was reversed on the ground that the attaching creditors of W. had the superior lien on the stock. By this time the stock had become worthless, if, indeed, it was not so at the time of the receiver's sale. Upon further proceedings on *procedendo*, *held* that the appellants were entitled to a surrender by the bank of all the stock which it received at the sale, but not to the payment by the bank of the amount bid for such stock.

2. ———: ———: MISTAKE IN DECREE. A mere mistake in the numerals used in the decree appealed from in designating the number of shares of stock to be sold, where the decree otherwise indicated the shares in question, is no ground for reversal, as the record below can be corrected at any time.

*Appeal from Lee District Court.*—HON. S. M. CASEY, Judge.

### FILED, MAY 14, 1889.

THIS is a controversy between the parties as to the proper decree to be entered in an action which was formerly tried in the district court upon its merits, but appealed to this court, where it was reversed, and remanded for further proceedings. A decree was entered to which the defendants, the Clark County Bank, Neillsville Bank, and Hammell & Co. excepted, and from which they appeal.

*S. M. Casey, R. F. Kountz* and *M. C. Ring,* for appellants.

*W. J. Knight, C. W. Bunn* and *F. O'Donnell,* for appellee.

*Frank Hagerman,* for plaintiff.

ROTHROCK, J.—I.   The opinion of this court upon the merits of the original controversy will be found in 71 Iowa, 270.   It appears from the opinion in that case, and from the record made in this appeal, that one Weston was the owner of stock in the Fort Madison Lumber Company.   In 1883 he borrowed a large amount of money of the Batavian Bank, of La Crosse, Wisconsin, and assigned to it certain certificates of stock in said company as collateral security ; but no transfer of the stock was made on the books of the company.   Afterwards he became insolvent.   D. Hammell & Co., the Clark County Bank, and the Neillsville Bank, creditors of Weston, commenced actions against him, and attached the stock in question. There being a controversy between the parties as to whether the Batavian Bank, as pledgee, or the attaching creditors, had the prior right to subject the stock to the payment of their claims, the plaintiff brought an action for the purpose of procuring a determination of that question.   The court held that the attachments were subject to the rights of the Batavian Bank.   This court reversed the cause, and held that the rights of the bank were subject to the attachments, and the cause was remanded for a decree accordingly.   When the suit was originally determined in the court below, a receiver was appointed, who took possession of the stock, and an order was made that the receiver should sell the same, and a public sale was had, at which the stock was sold for some seven thousand dollars.   There is a dispute between the parties as to the real purchaser at that sale. Appellants contend that the purchaser was one Bentley, and appellees insist that Bentley, who was cashier of

*Marginal note:* 1. APPEAL: reversal: restitution of property taken under judgment.

the Batavian Bank, purchased it for said bank. There is no dispute, however, that new certificates of stock were issued to the bank by the lumber company in lieu of the certificates which were sold. The order of court providing for the sale required that new certificates should issue to the purchaser of the stock which was pledged and attached. When the cause was remanded for a decree, the attaching creditors insisted that it was their right to have the amount at which the stock was sold paid into court for their benefit. The Batavian Bank contended that the decree should provide for the sale of the stock issued to it, and offered to deliver up the stock for the purpose. The court took this latter view of the rights of the parties, and entered a decree accordingly. It is claimed in behalf of appellants that the evidence taken in the proceedings to settle the decree shows that the Batavian Bank did not purchase the stock at the receiver's sale, but that the purchase was made by Bentley ; that he paid the receiver in cash for it, and that the money was paid over to the bank. If this be true, the bank should not be allowed to hold the money. But, notwithstanding the bid appears to have been made by Bentley in person, and he signed a receipt to the receiver for the money as cashier of the bank, yet, taking all the circumstances and the situation of the parties into consideration, we think the finding that the purchase was really made for the bank should be sustained. Bentley was the cashier of the bank. It was located at La Crosse, Wisconsin, and he attended the sale at Fort Madison, in this state, on the tenth day of May, 1886. On the next day he signed the receipt at Fort Madison to the receiver for and in behalf of the bank. He was at the sale, presumably, as agent for the bank. He surely acted in that capacity when he receipted for the proceeds of the sale, and his relation to the bank precluded him from making the purchase on his own account, and if his purchase was for himself, he would have made some transfer of the purchase to the bank. There is no evidence that he had either the time or opportunity to do so, and the substituted stock was

issued to the bank, and the original decree provided that new stock should be issued to the purchaser.

II.   The next question presented is the right of the bank to restore the stock to be sold or otherwise disposed of for the benefit of the attaching creditors.   Section 3198 of the Code is as follows:   " If by the decision of the supreme court the appellant becomes entitled to a restoration of any part of the money or property that was taken from him by means of such judgment or order, either the supreme court or the court below may direct execution or writ of restitution to issue for the purpose of restoring to such appellant his property or the value thereof."   We think that under this provision of the law the district court properly held that it was the right of the Batavian Bank to surrender all that it received by the sale.   The argument that the stock in question was not property taken from the attaching creditors by means of the judgment, and that the statute above cited has therefore no application, we do not think is sound.   Weston was notoriously insolvent, and these parties as creditors were in litigation over the stock in question, each with claims largely in excess of its value and the decision of the court practically awarded it to one party or the other, and it seems to us it would be grossly unjust to require the Batavian Bank to pay some seven thousand dollars for stock which is now conceded to be practically worthless.   As in some degree sustaining these views, see *Munson v. Plummer*, 58 Iowa, 736.   If the Batavian Bank had done any act which depreciated the value of the stock there might be some reason for holding that it should pay the amount of the bid.   But the only complaint made of the bank is that it would not loan money to the lumber company to enable it to carry on its business. That there was good reason for this refusal is apparent from the fact that none of the resident stockholders were willing to advance or loan money for that purpose. The fact is, the company was insolvent, and we believe from the evidence that its stock was practically worthless at the time of the receiver's sale.

THE SAME.

III.   The appellants contend that the decree should be reversed upon the ground that a mistake was made in the decree appealed from, in the numbers of the certificates ordered to be sold.   This is no ground for reversal.   The decree is for the sale of the new certificates issued in pursuance of the receiver's sale.   If there is a mistake in the numerals by which the certificates are designated, no prejudice will result to appellants.   The record can be corrected at any time.                              AFFIRMED.

2. ——: ——: mistake in decree.