L. D. ESTIS AND WIFE v. M. J. JACKSON.

*Estoppel—Fraud.*

1. In order to work an estoppel *in pais*, it is essential that there should be some conduct of the party against whom the estoppel is alleged, amounting to a representation or concealment of material facts; where the circumstances are equally well known to both parties, although they were mistaken in regard to their rights at law, the doctrine will not apply.

2. L., being seized in fee of lands, believed she had only an estate for life with remainder to her children, and in order to signify her assent to their conveyance of their supposed estates, signed the deeds which they executed for that purpose, her name not being in the body of the instrument. The deed under which L. took title to the fee was produced at the time of the execution of the conveyances from the children, and was read in the presence of vendee: *Held*, In the absence of any misrepresentation or concealment, there was nothing in the nature of fraud, actual or constructive, and L.'s act in signing the deed did not work an estoppel.

This was AN ACTION for damages for waste alleged to have been committed by defendant, tried at November Term, 1892,

111—10

of GRANVILLE Superior Court, *Winston, J.*, presiding. The plaintiff took a nonsuit and appealed.

L. D. Estis testified: "Duncan Loyd, a son of Sally Loyd, came to see me in regard to buying the land described in the complaint. Mrs. Sally Loyd said she was willing for her son Duncan Loyd to sell his interest in her estate, and would 'assign' with him to sell his interest in the land. I purchased the interest of Duncan Loyd first, and paid him seventy dollars. I think it was in the Spring of 1884. It was agreeable to Mrs. Sally Loyd, the widow; she said she was plumb willing for her children to sell their interest in the land, but it was to remain hers as long as she lived, and at her death to be mine. Mrs. Sally Loyd was also present when the next deed was made, two or three months afterwards. Mrs. Sally Loyd asked me if Arann Jones might have a slab tree to cover her kitchen; I said, 'Yes.' Mr. Bullock said to Mrs. Sally Loyd, 'You can't sell or convey any timber without Estis's consent.'"

The deeds were then introduced and read, that from D. M. Loyd being as follows:

"That the said D. M. Loyd and wife Molly Loyd, for and in consideration of the sum of seventy dollars to them paid by the said S. J. Estis, the receipt of which is hereby acknowledged, have bargained and sold, and by these presents do bargain, sell and convey to said S. J. Estis and her heirs, my interest in the land of Sallie Loyd lying on the waters of New Light Creek, adjoining lands of Hilman Dillard, C. M. Rogers and others, to have and to hold the aforesaid tract of land and all privilege and appurtenance thereunto belonging, to the said S. J. Estis and her heirs and assigns, to her and their only behoof; and the said D. M. Loyd and wife Molly Loyd warrant that they are seized of said premises in fee and the right to convey the same in fee-simple, that the same is free from all incumbrances, and that they will war-

rant and defend the title to the same against the claims of all persons whatsoever. In testimony whereof, the said D. M. Loyd and wife Molly Loyd have hereunto set their hands and seals the day and year above written."

his
DUNCAN ✕ M. LOYD.  [Seal.]
mark

her
MOLLY ✕ LOYD.  [Seal.]
mark

her
SALLY ✕ LOYD.  [Seal.]
mark

Test: WILLIAM E. BULLOCK.

The deeds from the other children being in the same form and signed by Sally Loyd.

Duncan Loyd testified: "I am a son of Mrs. Sally Loyd; I concluded to sell the land and went to see Mr. Estis; my mother said she was willing to sell my right away, and, if we had rather have it then than at her death, all right. The deed was fixed up; my mother signed it and said she was willing to it. She said she expected to live on it her lifetime, and if she didn't she would sell her interest. Mr. Estis said he would buy hers if she ever came to the conclusion to sell it. I occupied the land as a tenant of Mrs. Loyd, and she lived with me; Estis never entered into possession of the land under any of the deeds and never occupied the land; again, when Mrs. Jones, my sister, came to sell her interest in the lands, mother asked leave to give my sister a slab tree to cover the kitchen; Esquire Bullock did not speak, and Estis said, 'Give her two';. Esquire Bullock told my mother she had no right to use any timber except with Estis's consent. Several saw the money paid me and also to sister, Mrs. Jones; I was an heir of my mother and claimed simply as an heir of hers. Mother owned the land; had bought it of N. E. Cannady, and the deed was read aloud at

that time in the presence and hearing of Estis and ourselves. Mrs. Estis was not present at that time."

William E. Bullock testified: "I was present at the time of making all the deeds; Mrs. Sally Loyd was present and saw the money paid to each party, and consented to it. The old woman (Mrs. Sally Loyd) said she was willing for Estis to have it after her death; she claimed only a life-estate; she was willing, and if they were not willing to wait till she died she would save her lifetime right; she said she wouldn't put her name in face of the deed for that would cut her out; said some of her children were fixing for her to break up and go live with them, and sometime she would sell to Estis; Estis is her cousin. I told them they had better not use any of the timber except on the premises. The purpose of the deeds was simply to convey the interests of the children in the land and not to interfere with her interest at all. The Cannady deed was present and was read to the parties."

His Honor having intimated an opinion that the plaintiffs were not entitled to recover, the plaintiffs submitted to a nonsuit.

Under the instruction there was a verdict and judgment for the defendants, and the plaintiffs appealed.

The following motion for a new trial was made: "The plaintiffs move the Court for a new trial upon the ground that the Court misunderstood the testimony of witnesses Duncan M. Loyd and William E. Bullock as to the reading of the deed from N. E. Cannady and wife to Mrs. Sally Loyd, in the presence and hearing of L. D. Estis and wife Sarah J. Estis."

The said motion was based upon the foregoing affidavits, but was refused. Plaintiffs excepted and appealed.

*Messrs. J. W. Graham, A. W. Graham,* and *J. T. Strayhorn,* for plaintiffs.

*Mr. J. H. Fleming,* for defendants.

SHEPHERD, J.: Without discussing the general doctrine, it is sufficient to say in the present case that, in order to work an estoppel *in pais*, " there must be conduct—acts, language or silence—amounting to a representation or a concealment of material facts," and that " the truth concerning these facts must be unknown to the party claiming the benefit of the estoppel." 2 Pom. Eq., 264. " The estoppel is removed by proof that the party claiming its existence, even though mistaken in regard to his rights at law, had notice of the actual state of the facts at the time of acting upon the representation, and this, though the representation was made under oath." Bigelow Est., 520. " The estoppel does not apply where everything is equally well known to both parties." Herman Est., Sec. 957; Bispham Eq., 288; Dutchess Kingston's Case, notes Smith, L. C.; *Holmes* v. *Crowell*, 73, N. C., 613; *Loftin* v. *Crossland*, 94 N. C., 76; *Exum* v. *Cogdell*, 76 N. C., 139; *Mayo* v. *Leggett*, 96 N. C., 237. In *Exum* v. *Cogdell* the Court uses the following language: " In this case it appears, either by admission or the findings of the jury, that the plaintiff knew all the material facts in regard to the title, and could not have been deceived by misrepresentations of the defendant."

Applying the foregoing principles to the facts before us, it is plain that there is no estoppel. Mrs. Loyd was the owner in fee of the land in controversy, the same having been conveyed to her by one N. E. Cannady. She, her children, and the purchaser were all alike ignorant of the legal effect of the conveyance which was read to the parties at the time of the present transaction. It was supposed by them that Mrs. Loyd had but a life-estate, and that the children were entitled to a remainder in fee. The plaintiff purchased what she understood was the interest of the children, and the consideration was paid to them alone. Mrs. Loyd appears to have had nothing to do with the transaction but to signify her assent to the sale, which, in view of the under-

standing of the persons interested, was entirely unnecessary. She made no representation as to the rights of the children, except to state in effect that she was willing that they should sell their supposed interest, reserving to herself a life-estate. This, as we have seen, was done in view of a misapprehension of her title, which misapprehension was common to all of the parties, and it cannot reasonably be inferred that anything she said or did had the slightest effect in misleading the plaintiff. There was no withholding of information on her part, but, on the contrary, every fact which she knew concerning her title was equally well known to the purchaser. She was no party to the deeds executed by her children, and her signature to the same was of no effect. *King* v. *Rhew,* 108 N. C., 696. Having received no consideration, and being guilty of no misrepresentation or concealment as to the real facts constituting her title, there is nothing in the nature of fraud, either actual or constructive, which can estop her grantee from asserting her interest in the premises.

The affidavits filed before his Honor in reference to his alleged misunderstanding of the testimony cannot be considered by us. The granting of a new trial upon such a ground is a matter of discretion, and not the subject of review in this Court. *Munden* v. *Casey,* 93 N. C., 97 ; *McCullock* v. *Doak,* 68 N. C., 267.

Affirmed.