L. SCHOONOVER v. DAVID OSBORNE, Appellant.

**Guaranty:** EXTENSION TO NEW SUBJECT MATTER.   Where a guaran-
tor of the account of certain cattle dealers with a banking
firm, after the dissolution of such firm by one of the members
retiring, urged the remaining partner to continue the account,
such guarantor orally acknowledging his liability therefor, and
both parties believing that his guaranty continued, he did not
nevertheless become a guarantor of the new account.

*Estoppel to deny.* The parties having equal knowledge of facts, and
being mutually mistaken as to the law, such guarantor was
not estopped from denying liability for the new account.

APPLICATION OF PAYMENTS.   After the dissolution of the banking
firm, the remaining partner continued the account as before,
charging advances and crediting payments as one continuos ac-
count.   He testified that he considered the payments made out
of each shipment as an account of the advances made for such
shipment, but entered them on the account as he did as a mat-
ter of convenience.   *Held,* that the payments should be ap-
plied according to what he did, and not according to his secret
intentions; hence the payments should be applied to the oldest
debit items of the account.      •

**Opening and Closing Argument:** *Burden of proof:*   Under Code,
section 3701, providing that in the argument to the jury the
party then having the burden of the issue shall have the open-
ing and closing, where at the trial defendant admits his lia-
bility on plaintiff's claim, and the controversy is over defend-
ant's allegation and counterclaim, defendant has the right to
open and close.

**Reversal of Judgment:** DISPOSITION OF SUM PAID AS REDEMPTION
MONEY.   Plaintiff recovered judgment against defendant on
two causes of action.   The action was aided by attachment
of defendant's lands, which were sold under execution.   De-
fendant appealed, and pending the appeal executed a deed of
one piece so sold, reserving his right to the money represented
by the certificate of sale.   The grantee paid the necessary sum
to redeem the land from the sale to the clerk of court, and,
though the right to redeem was waived by the appeal under
Code, section 4045, plaintiff accepted the money as a redemp-
tion.   Thereafter the supreme court reversed the judgment,

holding that defendant was not liable on one of the causes of action. The defendant, by amendment of his answer, set up the facts of such sale and redemption, and demanded that such redemption money be credited on the remaining cause of action, and the purchaser who redeemed disclaimed all interest in the money. *Held*, that the money, having been obtained by plaintiff through the sale and redemption of defendant's land, which was thereby released from the lien of the attachment, should be treated as security in place of the land, and applied to the satisfaction *pro tanto* of the cause of action for which defendant was liable as of the date when plaintiff received the money.

Accounting for rental value of land held pending appeal. Certain other lands of defendant were also sold under the execution, and bid in by plaintiff, and sheriff's deed therefor was issued to him. He thereupon rented the lands to tenants, who had possession until the judgment was reversed and petition for rehearing was overruled. *Held*, that defendant was entitled to credit for the reasonable rental value of such lands during such time, whether plaintiff actually received rent from his tenants or not.

Disposition of funds made from sale of principal's property : *Not available as a credit to surety*. Where plaintiff recovered judgment against the principals and surety on notes and on account, and on appeal the judgment was reversed as to the surety on the ground that he was not liable on the account, he was not entitled, on a retrial, to have the proceeds of sale under execution of the property of the principals, which plaintiff had credited on the part of the judgment representing the account, credited on the notes.

*Appeal from Jones District Court.*—Hon. W. N. Treichler, Judge.

Tuesday, June 3, 1902.

The plaintiff recovered judgment against defendant and Osborne Bros. for $32,046.64 in December, 1886. This was based on a note and an open account. Execution issued in January, 1897, and the sheriff sold several tracts of land belonging to the defendant. The latter conveyed a portion of this to W. T. Shaw January 29, 1898, who later

deeded it to Ella F. Osborne, and paid into the office of clerk of courts for said Ella F. Osborne, to effect a redemption thereof, the sum of $8,802. The judgment was reversed as to defendant, but affirmed as to Osborne Bros. The facts essential to an understanding of the case are set out in the opinion found in 108 Iowa, 453. Certain amendments were filed, and another trial had between the plaintiff and David Osborne. It resulted in withdrawing the account from the jury, and rendering judgment for the amount due on the note, less some credits. Both parties appeal, that of the defendant being first perfected. *Affirmed* on plaintiff's appeal, and *reversed* on defendant's appeal.

*M. W. Herrick* and *Jamison & Smyth* for appellant.

*Ercanbrack & Lawrence* and *Ney & Remley* for appellee.

LADD, C. J.—On the former appeal David Osborne's guaranty of payment of sums of money advanced by Schoonover & Shaw to Osborne Bros. was held to create no obligation on his part to repay Schoonover money advanced by him to said firm after the co-partnership of Schoonover & Shaw had been dissolved by the retirement of Shaw. 108 Iowa, 453. On the trial had subsequent to the reversal it was made to appear that Schoonover, before letting Osborne Bros. have money on account, advised defendant that it would be better for the firm to quit dealing in cattle, and to settle the amount due, and was, as the evidence tended to show, entreated by David Osborne, who orally acknowledged his liability for advances, not to insist on payment, and continue the account. Undoubtedly both supposed defendant bound by the written guaranty for any advances which might be made by plaintiff, but, as decided on the former appeal, oral testimony of their understanding was **not** admissible

as bearing on the construction to be given that instrument; and the promise or acknowledgment, if any, having reference to the satisfaction of the debt of a third party, was within the statute of frauds. Besides, if liable, then the debt on account as it then existed was extinguished by the subsequent transactions. It is not contended that defendant made any false representations, nor that fraud was practiced. Each was mistaken in the law, which both were conclusively presumed to have known. Such a situation furnishes no ground whatever for the plea of an estoppel. "To work an estoppel *in pais*, conduct, acts, language, or silence amounting to a representation or a concealment of material facts, * * * and the truth concerning these facts must be unknown to the party claiming the benefit of the estoppel." A party is never estopped by a statement of law based on undisputed and known facts. *Estis v. Jackson*, 111 N. C. 145 (16 S. E. Rep. 7, 32 Am. St. Rep. 784); *Whitwell v. Winslow*, 134 Mass. 343; *McKeen v. Naughton*, 88 Cal. 467 (26 Pac. Rep. 354); *Brewster v. Striker*, 2 N. Y. 19; *Norton v. Coons*, 6 N. Y. 33; *Cameron v. Cameron*, 95 Ala. 344 (10 So. Rep. 506); *Holcomb v. Boynton*, 151 Ill. 294 (37 N. E. Rep. 1031). In the last case it was said: "If both parties are equally cognizant of the facts, and one has acted under a mistaken idea of the law, the other cannot say he has been deceived thereby, and is entitled to an application of the rule, but will be considered as having acted upon his own judgment solely."

II. The evidence also tended to show that, after Shaw retired from the firm, Schoonover repeatedly urged Osborne Bros. to reduce their account, and, while the record of their transactions was kept precisely as before, their indebtedness was somewhat decreased. Plaintiff testified: "When they disposed of stock, they came in and deposited the proceeds. I had agreed that they should draw on the bank to pay for the cattle, and pay for

them out of the proceeds of the sale of the stock, provided they did not overdraw too much. * * * I made no change in my method of keeping account, or honoring the checks, or the manner of charging up interest. * * * I bunched the checks together, and charged them to them, and gave credits for the drafts they drew on the commission men in Chicago. * * * Q. Now, then, you may state whether there was an application of the gross amount of that draft on the account, or was the application of the balance the difference between the checks and the amount of the drafts? A. I considered it a payment of the checks, but, as a matter of convenience, credited them with the full amount of the draft, and charged the checks." What he considered is not so important as what he did. What he did was to continue the account of Shaw and Schoonover without any interruption, but with greater watchfulness and insistency that the overdraft should not be increased. He does not claim to have intended otherwise, or that he gave any thought to the application of payments. While he may have considered that the deposits covered the checks paid, he did not so apply them. They became a part of the continuous open account on which this action is based, and, treating them as such, the rule that credits must be applied on the earliest debits obtains. The mere matter of failing to balance accounts on the books is not important in determining the right of these parties. The mingling of those before with those after Shaw retired is important, for under such circumstances both are to be treated as one continuous account, and payments applied accordingly. If plaintiff ever had any intention of applying payments otherwise, it was never carried out. These will be credited in accordance with what he did, not what he secretly intended, but failed, to do. The plaintiff is not yet reconciled to the conclusions reached on the former hearing. It is to be said that they are amply fortified by authority cited in the opinion, and no decision to the con-

trary has been called to our attention. Certainly *National Exch. Bank v. Gay*, 57 Conn. 224 (17 Atl. Rep. 555, 4 L. R. A. 343), is not in point, as the application of payments was not there involved. But courts cannot expect always to convince litigants. "Though the hope of deciding causes to the mutual satisfaction of parties would be chimerical, that of convincing them that the case had been fully and fairly decided, and that due attention had been given to the arguments of counsel, and that the best judgment of the court had been exercised in the case, may be sometimes indulged. Even this is not always attainable. In the excitement produced in ardent controversy gentlemen view the same object through such different media that minds not unfrequently receive therefrom precisely opposite impressions. The court must, however, see with its own eyes, and exercise its own judgment, guided by its own reason." *Mitchell v. U. S.*, 9 Pet. 710 (9 L. Ed. 283).

III. The action was aided by writ of attachment levied on land and personal property. After judgment December 15, 1896, execution issued, and was levied on 215 acres of land belonging to David Osborne. This farm was bid in by plaintiff for $8,000, and to him the sheriff executed a certificate of sale January 27, 1897. On January 29, 1898, David Osborne and his daughter, Ella F. Osborne, arranged for the transfer of the land to the latter, with the understanding that he was to give her all over the amount of Schoonover's certificate of sale, but was to reserve his right to the money represented thereby. She arranged with W. T. Shaw, to furnish for her the amount necessary to redeem. Thereupon David Osborne conveyed the farm by quitclaim deed to Shaw, at his daughter's instance, as security, and the latter deposited with the clerk of the district court the amount necessary to redeem. In February of the same year Shaw deeded the land to Ella F. Osborne, who either repaid him or se-cured him for the moneys advanced. The sum paid the

clerk—$8,802—to effect redemption was received by plaintiff January 31, 1898, and this entry made in the judgment docket: "All payments received on this judgment are applied first to the judgment on account." In an amendment filed to the answer, after procedendo issued, the defendant averred that the proceeds of such sale should have been credited on the note, and also asked for the allowance thereof by way of counterclaim. Relief was denied, apparently on the ground that he had no interest in the redemption money paid. True, the right to redeem had been waived by appeal. · Section 4045, Code. No advantage was taken of this by plaintiff. He never demanded a deed. The sale was made subject to redemption, a certificate of sale rather than a deed issued, the money paid to the clerk for the purpose of redeeming, and so accepted by him. In these circumstances the money paid the clerk and received by Schoonover should be treated precisely as though received by him in effecting a valid redemption. That was the purpose in making payment; and his acceptance of the amount, knowing, as he must have known, its object, precludes the inference of any other intention on his part, and places him in a situation where he ought not to be allowed to question the right. Nor does he. The facts eliminated Shaw from the case, as whatever he did was in behalf of Ella F. Osborne, and both filed disclaimers to any right or interest in the redemption money.

IV. Had David Osborne made the redemption, there is no doubt but that he could have recovered the money. All held in *Hanschild v. Stafford*, 27 Iowa, 301, was that restoration of property which has passed to innocent purchasers, or the proceeds, which have been paid out under the direction of the court, cannot be ordered by virtue of section 4145, Code. But, as there said, the remedy afforded by this statute is merely cumulative. *Insurance Co. v. Heath*, 95 Pa. 333; *Owings v. Owings*, 10 Gill & J. 267.

VOL. 117 IOWA.—28.

In *Munson v. Plummer*, 58 Iowa, 736, and *Ft. Madison Lumber Co. v. Batavian Bank*, 77 Iowa, 393, the court decided that upon reversal the property sold, when possible, will be restored, rather than require payment of the amounts bid, not paid, by the purchasers at the sales. In *Frazier v. Crafts*, 40 Iowa, 110, the plaintiff was held to be a *bona fide* purchaser, and, under the circumstances disclosed, under no obligations to make restitution. In *Zimmerman v. Bank*, 56 Iowa, 133, certain property had been levied on and sold. Afterwards the judgment was reversed, and suit brought for the value of the property seized, and it was held that, as at common law the action would have been assumpsit upon the implied promise to pay the reasonable value of the property taken, or case for the breach of the legal duty to make restitution, no demand was necessary. In *Weaver v. Stacy*, 93 Iowa, 683, the redemption was not made by the judgment defendant, but by parties whose land Stacy was attempting to have subjected to the satisfaction of the judgments. In *Grim v. Semple*, 39 Iowa, 570, and *Burrows v. Stryker*, 45 Iowa, 700, redemption to prevent the execution of sheriff's deeds were not so far voluntary as to amount to acquiescence in the judgments as correct. In *Manning v. Poling*, 114 Iowa, 20, in speaking of these cases, the court said: "In such a case there is no acquiescence in the findings of the court, and recovery of the amount paid may be had in event of a reversal, not because of involuntary payment, but owing to the provisions of the statute requiring restitution, though money so paid might be recovered on the principal that it belonged *ex æquo et bono* to the party paying it." *Chapman v. Sutton*, 68 Wis. 657 (32 N. W. Rep. 683); *Haebler v. Myers*, 132 N. Y. 363 (30 N. E. Rep. 963, 15 L. R. A. 588, 28 Am. St. Rep. 589); *McCracken v. Paul*, 65 Ark. 553 (47 S. W. Rep. 854, 67 Am. St. Rep. 948). Section 4145, Code, reads: "If by a decision of the supreme court, the appellant becomes entitled to a restoration

of any part of the money or property that was taken from him by means of such judgment or order, either the supreme court or the court below may direct execution or writ of restitution to issue for the purpose of restoring to him such property or its value." It has never been held that restoration should be limited to property sold, nor does the statute bear that construction. If money of the judgment defendant is obtained by reason of such judgment, as through a redemption of the property sold, he is entitled to its return upon reversal. This is manifest from the language employed, and in harmony with every principle of justice. *Little v. Bunce*, 7 N. H. 485 (28 Am, Dec. 363), note; *McJilton v. Love*, 13 Ill. 486 (54 Am. Dec. 449. In the last case it was said: "The law is well settled that, if a judgment is reversed, the parties are to be restored to their original rights, so far as it can be done without prejudice to third persons. If the plaintiff has derived any benefit from the judgment, he must make as full restitution to the defendant as the circumstances of the case will permit. If he has received payment in money from the defendant, the latter can recover it back in an action of indebitatus assumpsit. If he has obtained money by the sale of the property of the defendant, the latter may recover it as so much money had and received to his use. If he has purchased in property under the judgment, and still retains the ownership, the defendant may recover the specific property in the appropriate action." See cases collected 18 Enc. Pl. & Prac. 871, 884, 893. The whole matter is thus accurately summed up in *Reynolds v. Harris*, 14 Cal. 668 (76 Am. Dec. 459): "The current of authority, broken only by a case or two, goes directly to the point that a party obtaining through a judgment, before being reversed, any advantage or benefit, must restore what he got to the other party after reversal."

V. But David Osborne did not himself redeem. The money came from his daughter. Nevertheless, the land

had been seized and sold as his property, and to satisfy a debt supposed to be due from him. Ella F. Osborne was not a mere intermeddler. She had the same right to redeem the owner would have had had he retained title. The money was paid in the office of the clerk to redeem from this sale, and hence to be applied on a debt of David Osborne. Schoonover could receive it for no other purpose. The effect of the reversal was to merely set aside the sale, and leave the parties in the same situation, as nearly as practicable, as though no trial had occurred. Had there been no sale, or, if a sale, no redemption, the levy of the writ of attachment would have continued a lien on the land, which, upon the rendition of judgment at the second trial, might have been sold on execution notwithstanding defendant had transferred the title. See *Treat v. Dunham*, 74 Mich. 114 (41 N. W. Rep. 876, 16 Am. St. Rep. 616). Now that redemption was made, it would not be equitable to allow plaintiff to accept and retain the money paid in, and at the same time insists upon a continunce of the lien of the attachment. He appears to be perfectly willing to keep the money, but has manifested no inclination to discuss the status of the levy. It will be remembered that upon making the transfer to Ella F. Osborne she and defendant orally agreed that defendant would retain the interest in the land represented by the certificate of sale. For present purposes it is not material whether this reservation was enforceable, even as between the parties. In any event, it explains her disclaimer of any interest in the redemption money, and amounts to no less, under the circumstances, than consent, by implication at least, that it be used for the purpose for which it was paid. As against her it seems clear that plaintiff could not insist on the lien of the attachment on the land. Having once exhausted his remedy, and retained the proceeds with consent of all parties, he should not be permitted to again seize the property. If, however, he be deprived of the benefit of

the lien of the levy, it is because he has something equally
valuable to be estimated by his bid at the sheriff's sale,
and that is money paid to the clerk, and accepted by him
to effect redemption. Possibly, as contended, Ella F. Os-
borne could not have compelled restoration of this upon
reversal of the judgment. That may be conceded, though
only for the purposes of this case. But, if this might not
have been, plaintiff could not keep the money paid to dis-
charge the levy, and at the same time insist upon the right
to again enforce judgment against her property. As said,
she disclaims any interest in the money, and the plaintiff
clings to all he has received. Under these circumstances
we think the redemption money must be treated as a fund
held in lieu of the lien of the attachment levy, and subject
to the orders of the court. It should not be overlooked
that this payment was not wholly voluntary. It was ex-
acted by the compulsory processes of the court. To per-
mit a litigant to obtain property, as was done in this case,
and relieve him entirely from making any account of it,
would amount to little less than legalized robbery. Hav-
ing collected it by execution against the defendant and his
property, treating it as fund for the payment of his indebt-
edness, included in the identical judgment on which that
execution issued, works no hardship to Schoonover. It
merely prevents him from appropriating that which does
not legally belong to him. We do not say that Osborne
might have recovered in an action *ex æquo et bono*, or under
the statute relating to restitution; nor do we say that Ella
F. Osborne could not have recovered it. We simply hold that
under the circumstances disclosed by this record David
Osborne had such an interest in the money paid to redeem
from a sale of his land as entitled him to insist on its ap-
plication to the satisfaction of any debt found due him in
that action. As already indicated, counsel are mistaken
in their contention that the payment of Ella F. Osborne
was that of an utter stranger. See *Jackson v. Railway Co.*,

—N. J. Err. & App. —, 49 Atl. Rep. 730, 55 L. R. A. 87, and *Crumlish's Adm'r v. Improvement Co.*, 38 W. Va. 390 (18 S. E. Rep. 456, 23 L. R. A. 120), and note, 45 Am. St., Rep. 872. As pointed out, she exercised a right the law gave her in making redemption. The sole object was the satisfaction of a lien on her land, in which the plaintiff acquiesced by drawing the money from the clerk. And the purpose of the entire transaction—the levy, the sale, the redemption—was to discharge the judgment debt of David Osborne. To effect that object only did the law tolerate the use of its processes. She was not only not a stranger, but may well be said to have paid on account of defendant's indebtedness, and he has the right to have the money so applied. Had defendant redeemed, his right to restitution on the application of the redemption money could not be questioned. As the land was his when seized and sold, and the redemption affected by his vendee to discharge it from the judgment lien, and she acted in pursuance of an understanding that he was to retain the interest represented by the certificate of sale, we think he properly insisted on the application of the redemption money on any indebtedness of his found due on the second trial. He admitted in his answer the debt evidenced by the note, and prayed that this money be applied thereon as of the date redemption was made. Technically it was a fund held in lieu of the lien on the land to satisfy any judgment which might be obtained. As there was no controversy concerning the amount owing on the note save in the application of the proceeds of different execution sales, we see no reason for not applying the item on the defendant's indebtedness in making up judgment for the balance due; and, as plaintiff had enjoyed the use of the money, justice required such application as of the date of the redemption. The indorsement of Schoonover on the judgment docket is of no consequence, as he had no right to devote the money to the satisfaction of an indebtedness

other than that of David Osborne. In not allowing defendant a credit for the redemption money the court erred.

IV. Certain other land of David Osborne was sold on execution, and a sheriff's deed executed to plaintiff February 1, 1898. The opinion reversing the judgment was filed May 18, 1899, but the petition for rehearing not overruled until the 1st of November following. Defendant claimed the reasonable rental value of this land up to the latter date. The court instructed the jury that, if the plaintiff took possession of the land under the deed, he would be liable for "the fair rental value thereof during the period which plaintiff had possession. But if you find that plaintiff did not dispossess the defendant of said land, or if you find that plaintiff entered into an agreement with defendant, or any person acting for him, and thereby arranged for the use of the property, then the plaintiff is only liable for the amount he actually received under said agreement, less any expenses necessarily incurred by reason of said agreement, if any; and you should so find." An exception was taken to this instruction. The plaintiff either rented the land to Shaw, or through him to Ella F. Osborne and one Wise, during the year 1898, and received therefor $600. Inferentially the same parties were in possession in 1899, holding over, though this does not clearly appear from the record. The evidence of W. M. Osborne that David Osborne had nothing to do with the premises after the execution of the sheriff's deed is undisputed. Renting the land to others operated to dispossess defendant, and there is no eviednce whatever that he, or any person acting for him, made any arrangement or agreement concerning the use of the land with Schoonover. According to Schoonover's testimony, Shaw did not pretend to act for David Osborne, and nothing in the records shows that he was authorized to do so. If plaintiff sent word to Shaw, when the opinion was filed, that they could use the land right along, and there would be no rent to

pay unless there was a rehearing, it does not appear that the informaion reached defendant; and if by "they" was meant the parties who rented the land the year previous, and were holding over, we do not see how he can be bound by Schoonover's leniency in failing to exact compensation for the use of the land from those he had put in possession. As the record stood, the defendant was entitled to the reasonable value of the use of the premises during the period he was deprived of their possession. Plaintiff insists that he should be required, in any event, to pay over only what he received. But the instruction does not proceed on that theory. Nor do we think it sound. The authorities differ as to whether the value of property sold on execution or the price received shall be restored upon reversal of the judgment when it cannot be returned in specie. Here there was no judicial sale of the use. If the value thereof was not obtained, it was the creditor's fault; and under the rule as heretofore announced he should be charged for the reasonable rental values of this land. *Bradley v. Brown*, 86 Iowa, 359. But see contra, *Rabb v. Patterson*, 42 S. C. 528 (20 S. E. Rep. 540). Of course, if Osborne finally collected the rent from those in possession for the second year, or might have done so after the petition for rehearing was overruled, a different question would arise.

VII. After all the evidence had been introduced, the defendant demanded the opening and closing argument to the jury. The claim on the account had been withdrawn by the court, and the burden of proof was on defendant as to the remaining issues. Appellee suggests the execution of the note was not admitted. If so, that issue could be raised only by a specific denial, which was not interposed. But, as already indicated, the indebtedness thereon was conceded, and the court told the jury that, "The defendant having admitted the execution of the note and his liability, shifts the burden of proof upon him to establish the allegations of his answer and counter-

claim, and he must do so by a preponderance of the evidence." The statute as it formerly stood provided that "the party having the burden of the issue shall have the opening and closing." Section 2780, Code 1873. And in *Milwaukee Harvester Co. v. Crabtree*, 101 Iowa, 526, it was said to be the better practice to claim the right before the introduction of the evidence. The order of argument then depended on the issues made by the pleadings, and not the issues which, after the introduction of the evidence, are to be submitted to the jury. This change was wrought by Code section 3701, which reads: "The parties then may either submit or argue the case to the jury. In argument the party then having the burden of the issue shall have the opening and closing," etc. The insertion of the word "then" after "party," in the last sentence quoted, leaves no doubt but that the right to open is to be settled after the introduction of the evidence, and not, as formerly, before the trial begins. The defendant was entitled to open. Whether the error in denying the right was prejudicial need not be determined, as in any event the case must be reversed. But see *Preston v. Walker*, 26 Iowa, 205; *Miller Brewing Co. v. DeFrance*, 90 Iowa, 400; *Milwaukee Harvester Co. v. Crabtree*, 101 Iowa, 526.

VIII. Certain property of Osborne Bros. was sold on execution, and the proceeds applied by Schoonover on the part of the judgment rendered on the account. Appellant urges that, as he was surety, he may insist upon the application thereof to the satisfaction of the note, as it was earlier in point of time; and he reasons on the theory that no application was made by Schoonover. That the latter had the right to make application as he did appears from *Small v. Older*, 57 Iowa, 326, and *Citizens Bank v. Whinery*, 110 Iowa, 390.

IX. The errors assigned which have been disposed of in the last three divisions of the opinion were raised on defendant's appeal. These were fully argued by plaintiff

in response to defendant's brief, and by the latter in reply. In a reply filed in the appeal taken by him the palintiff for the first time suggests the insufficiency of the assignment of errors. While no question may be considered unless properly assigned (section 4136, Code), litigants are not entitled to a discussion of points in an opinion unless raised in apt time. See rule of practice 39; *Fink v. City of Des Moines*, 115 Iowa, 641. Suffice it to say that the points settled are raised in some way by the assignments of error.

The judgment will be AFFIRMED on plaintiff's appeal and REVERSED on defendant's appeal.