[Civ. No. 4676. Second Appellate District, Division Two.—December 11, 1925.]

## HATTIE L. JONES, Respondent, v. FANNIE B. COULTER, Appellant.

[1] CONTRACTS—EVIDENCE—CONSTRUCTION—EXECUTION AND DELIVERY —PAROL DECLARATIONS.—As a general rule, parol evidence is not admissible when it relates to the construction to be given to a written contract, but is admissible when it relates to the execution or authenticity of the instrument, or to its delivery, or whether the delivery was absolute or conditional; and in such cases the execution and acts of delivery, being mostly a matter *in pais*, oral declarations of intention connected with the execution and delivery may properly come in as part of the *res gestae*.

[2] DEEDS—EXECUTION IN BLANK—VOID INSTRUMENTS.—A deed executed in blank is void and passes no title; there must be in every grant a grantor, a grantee, and a thing granted, and a deed wanting in either essential is absolutely void.

[3] ID.—FILLING IN NAMES AND DESCRIPTION—AGENCY—WRITTEN AUTHORITY ESSENTIAL—STATUTE OF FRAUDS.—Under the statute of

---

1. See 10 Cal. Jur. 916, 929; 10 R. C. L. 1016, 1040.
2. See 9 Cal. Jur. 218; 8 R. C. L. 956.
3. See 9 Cal. Jur. 126.

frauds, the name of the grantor or grantee or a description of the property in a deed cannot be inserted by an agent for the grantor, in the absence of the latter, unless the agent's authority be in writing; and if the authority of the agent be not in writing, his insertion of the name of the grantor or grantee or description does not pass title to the property.

[4] ID.—COMPLETION BY AGENT WITHOUT AUTHORITY OF PRINCIPAL— QUIETING TITLE—EVIDENCE—FINDINGS.—In this action to quiet title, where the defendant claimed under deeds which plaintiff claimed were mistakenly completed and recorded by her agent without her authority, the evidence was sufficient to support the finding of the trial court that a power of attorney given by defendant to plaintiff was executed to restore plaintiff to full control and ownership of the properties and to correct the mistake made by her agent when he permitted the deeds to be recorded.

[5] ID.—ESTOPPEL—FACTS NECESSARY TO BE SHOWN.—In order to call into exercise the principles of equitable estoppel, the party making the admission by his declarations or conduct must be apprised of the true state of his own title; the admission must be made with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; the other party must be destitute of all knowledge of the true state of the title and of the means of acquiring such knowledge; and he must have relied directly upon such admission and be injured by allowing its truth to be disproved.

[6] ID.—RATIFICATION—EVIDENCE—ESTOPPEL.—Where plaintiff's agent, through mistake, filled in blanks and recorded certain deeds, which had been executed in blank by plaintiff to defendant, and the grantee, to rectify the mistake, executed a power of attorney to the grantor, the fact that the grantor thereafter signed the grantee's name to mortgages and mortgage notes in dealing with the properties conveyed did not estop the grantor from denying the grantee's claim of title.

[7] ID.—FILLING IN NAMES AND DESCRIPTION—AGENCY—RATIFICATION. Where the purported grantor's agent, without authority, filled in blank deeds executed by the former, inserting names of grantor and grantee and description of properties, such act could be ratified by the purported grantor in writing only, under section 2310 of the Civil Code.

---

(1) 22 C. J., p. 1156, n. 39, p. 1177, n. 49, p. 1178, n. 50, p. 1212, n. 48, p. 1222, n. 14, p. 1223, n. 15, 20, 22.   (2) 18 C. J., p. 176, n. 50, p. 187, n. 81.   (3) 27 C. J., p. 295, n. 4.   (4) 32 Cyc., p. 1372, n. 26.   (5) 21 C. J., p. 1146, n. 56, p. 1147, n. 61, 62.   (6) 21 C. J., p. 1147, n. 62.   (7) 27 C. J., p. 298, n. 42; 39 Cyc., p. 131, n. 92.

5.  See 10 Cal. Jur. 627; 10 R. C. L. 689.
7.  See 1 Cal. Jur. 777.

APPEAL from a judgment of the Superior Court of Los Angeles County. F. M. Jamison, Judge Presiding. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Weber & Crawford and Hedley Richmond for Appellant.

LeRoy M. Edwards and Willard M. Conklin for Respondent.

FINLAYSON, P. J.—This is an action to quiet title to five separate parcels of land in Los Angeles County. Defendant, the daughter of plaintiff, claims that she and her mother own the land as joint tenants. The answer not only denies plaintiff's allegation of entire ownership, but alleges, as conduct on the part of plaintiff estopping her from asserting sole ownership, that the latter, subsequently to the time when she signed certain blank deeds presently to be mentioned, not only treated the properties as jointly owned by herself and defendant, but that she also, as defendant's attorney in fact, executed several promissory notes secured by mortgages upon the properties, and that in this way she obligated defendant personally as well as encumbered the latter's joint title to the lands. The trial court found all of the issues in favor of plaintiff and entered judgment for her accordingly. Defendant appeals.

The situation as to one of the pieces of property—lot D in block 87 of the city of Santa Monica (referred to in appellant's brief as parcel No. 1)—differs radically from that of the remaining four parcels (referred to in appellant's brief as parcels Nos. 2, 3, 4, and 5). We shall consider the questions presented by this appeal with respect to the latter parcels of land before taking up those relating to the former.

### Parcels, 2, 3, 4, and 5.

The facts testified to by plaintiff and her witnesses respecting parcels, 2, 3, 4, and 5 are substantially these: On August 7, 1920, and for some time prior thereto, plaintiff was the sole owner of these four parcels of land. On the last-mentioned date plaintiff, being in poor health and

about to enter a hospital, was desirous of making some provision for the disposition of the properties in the event of her death. For that purpose she and defendant called upon the vice-president of the Ocean Park Bank, George A. Neilson, and sought his advice. Though the evidence does not directly disclose that defendant saw and heard all that was done and said upon this occasion, it is a fair inference from all of the evidence that she did see and hear everything. Plaintiff was advised by Neilson to prepare deeds conveying the property to some third person, who, upon being vested with the title, would immediately convey the same to plaintiff and defendant as joint tenants. It doubtless was Neilson's idea that if this suggestion were followed all the title to the properties, in the event that the mother predeceased the daughter, would vest in the latter under the right of survivorship. While he thus was advising plaintiff to convey the properties to some third person, Neilson pointed to the cashier of the bank, Arthur H. Meng, and said that Meng would act as the third party to whom the properties could be deeded, and that then Meng could deed them back to plaintiff and defendant as joint tenants. Plaintiff assented to this suggestion and thereupon Neilson procured two printed forms of deeds, with blank spaces left in them for filling in the names of the grantor and grantee and the descriptions of the properties. None of the blanks was filled in, but plaintiff, at Neilson's suggestion, signed her name to each instrument as a blank form of deed. When she signed the two documents plaintiff, so she testified, said to Neilson: "These deeds are not to be made a matter of record; they are to be held in the vault until such time as I pass out, if I do." Neilson had no written authority to fill in the name of the grantor or that of the grantee, or the description of any of the properties. Indeed, he had no authority in writing of any nature whatsoever. After signing these blank forms of conveyance plaintiff, accompanied by defendant, left the bank. Thereupon Neilson caused his stenographer to fill in plaintiff's name as the grantor and Meng's name as the grantee, in each of the blank forms of deed which plaintiff had signed, and likewise the description of each of the properties now found described therein. Neilson then procured Meng to execute two deeds purporting to

convey the properties to plaintiff and defendant as joint tenants. Through an error on the part of some clerk in the bank the four documents were recorded in the office of the county recorder. They were recorded August 10, 1920. It seems that before the instruments were placed on record a notary public in the bank attached his notarial certificate to each of the two documents which plaintiff had signed, although the latter had not appeared before him for that purpose nor had she ever acknowledged to him her signatures to the two blank forms of conveyance. Plaintiff, according to her testimony and that of Neilson, returned to the bank on August 14, 1920, accompanied by her daughter, and then discovered that the instruments, contrary to her instructions, had been recorded. She testified that upon making this discovery she upbraided Neilson and asked him what should be done to meet the unexpected situation. Neilson suggested that defendant execute to her mother either a quitclaim deed or a power of attorney. Neilson is not a lawyer. His suggestion that defendant might execute a power of attorney to her mother seems to have been based upon the idea that if that expedient were adopted then plaintiff, notwithstanding the recording of the deeds, could deal with the properties during her lifetime just as though she were still the sole and absolute owner thereof. Defendant, who was willing to adopt either of the suggestions made by Neilson, executed to her mother a power of attorney. Defendant paid no consideration for any of the titles which the deeds from Meng purported to vest in her as a joint tenant; nor was any of the deeds delivered to her. According to plaintiff's testimony, the recorded documents were turned over to Neilson as soon as the power of attorney was executed. Plaintiff testified that it was never her intention to deliver any deed to defendant or to divest herself of any of the title during her lifetime.

At all times subsequent to August 14, 1920, plaintiff handled the properties the same as before, paying all taxes herself, collecting all the rents and paying all interest accruing upon certain promissory notes which were secured by mortgages previously executed and which were encumbrances upon the property at the times when the above-mentioned instruments were signed. Thereafter these

existing mortgages, as they matured, were renewed, or new ones were given and the old mortgages were discharged of record. These new mortgages and the notes secured thereby were executed as the joint mortgages and notes of plaintiff and defendant, the former signing her daughter's name as the latter's attorney in fact under the power of attorney which had been given her. Defendant never received any part of the proceeds of these notes. Though defendant, as a joint maker of the notes, is personally obligated thereon, the trial court found that the value of the mortgaged properties is "amply sufficient to protect and take care of the full payment of said notes," that "plaintiff is solvent and able to meet any and all indebtedness represented by said mortgage notes," and that "there is no evidence that defendant will ever be called upon to make good the principal or interest upon any of said notes, or to pay any portion thereof."

Some time in the year 1921 plaintiff and her daughter became estranged, and in the month of July of that year the latter revoked her power of attorney. The trial court found that upon the execution of the power of attorney plaintiff understood and believed that it had the force and effect of revesting her with and restoring to her "complete ownership, title and possession in and to" the parcels of land; that "the acts and conduct of plaintiff subsequent to August 14, 1920, with respect to the above described real property were made in pursuance to such belief"; and that plaintiff, "immediately upon discovering that said power of attorney had been revoked, realized for the first time the true situation with respect to her property and immediately instituted" this action.

Practically the only issue as to which there is any substantial conflict in the evidence is that which relates to the reason for giving the power of attorney. Defendant testified that the deeds were not recorded by mistake; that it was plaintiff's intention, when signing the blank deeds, that her daughter should become a joint owner of the properties; that the power of attorney was given before either knew that the deeds had been recorded, and that it was given for the purpose of enabling the mother to handle the properties for the daughter's benefit in the event that the latter should be absent from the state. On

75 Cal. App.—35

these issues the court found in favor of plaintiff, the finding being that on August 14, 1920, defendant, "at the suggestion of the said George Neilson, and with the intent and purpose of correcting the error made by said George Neilson in recording the aforesaid deeds, and for the purpose of restoring to and in plaintiff the full and complete ownership, possession and control of all of the above described real property, . . . executed and delivered to plaintiff a full general power of attorney, giving to plaintiff full general power and control with respect to, and over all, the above described real property."

Plaintiff's oral evidence respecting the circumstances under which she signed the blank forms of conveyance was admitted by the trial court over defendant's earnest objection that plaintiff should not thus be permitted to impeach the validity of her own deeds—documents which, at the time of the trial, appeared upon their face to be valid, duly executed, acknowledged, and recorded instruments of conveyance, with the names of grantor and grantee and descriptions of the properties duly inserted therein.

The first point made by appellant is that the court committed grievous error in receiving oral evidence of the circumstances under which respondent executed the blank forms of deed. In support of this contention appellant asserts that the evidence violates the elementary rule that parol evidence may not be received to contradict or vary a written instrument of conveyance in the absence of a plea that, through mistake, accident, fraud, or undue influence, the instrument does not correctly set forth the true agreement of the parties. The objection is devoid of merit. Appellant's claim of title rests entirely and exclusively upon such title, if any, as her grantor, Meng, received under the blank forms of deed signed by respondent. The sole purpose of the parol evidence was to show that the recorded instruments are not those which respondent signed —that the ones which she signed contained neither the name of a grantor nor that of a grantee, nor even the description of any property; whereas those which now appear of record, and upon which appellant relies to show title in her, do contain the name of a grantor and of a grantee and descriptions of the properties. The parol evidence did not relate to the *construction* of the instru-

ments, but to their execution and authenticity. That is to say, it was not the purpose of respondent's evidence to show that the recorded deeds to Meng did not correctly embody the understanding of the parties, but to show that those instruments were not the ones which she signed—that those which she signed were mere blank forms of conveyance, and that as such they were and are absolute nullities. [1] "As a general rule," says the court in *Verzan* v. *McGregor*, 23 Cal. 343, "parol evidence is not admissible when it relates to the *construction* to be given to a written contract; but such evidence is admissible when it relates to the execution or authenticity of the instrument, or to its delivery, or whether the delivery was absolute or conditional. In such cases, the execution and acts of delivery being mostly a matter *in pais*, oral declarations of intentions connected with the execution and delivery may properly come in as part of the *res gestae*." Addressing itself to a situation substantially analogous to that presented by the record before us, the court in *Vaca Valley etc. R. R.* v. *Mansfield*, 84 Cal. 566 [24 Pac. 147], says: "It was competent, therefore, for the plaintiff to prove all the facts and circumstances connected with the deed in question, and to show whether it was a valid deed or not."

There can be no doubt as to the utter invalidity of the instruments under which appellant's grantor, Meng, deraigned his purported title. The blank deeds signed by respondent and subsequently filled out under Neilson's direction, with Meng's name inserted as the purported grantee, were mere nullities. [2] According to the great weight of authority, a deed executed in blank is void and passes no title. (*Wunderlin* v. *Cadogan*, 50 Cal. 613, and cases cited *infra*.) As was said in *Whitaker* v. *Miller*, 83 Ill. 381, "there must be, in every grant, a grantor, a grantee and a thing granted, and a deed wanting in either essential is absolutely void." In the instant case each of the instruments signed by respondent was wanting in all three of these essentials to a valid deed.

[3] Though the decisions of other jurisdictions are not in entire harmony upon the question, it has been definitely decided in this state that under our statute of frauds the name of the grantor or grantee or a description of the property cannot be inserted by an agent for the grantor,

in the absence of the latter, unless the agent's authority be in writing. If the authority of the agent be not in writing, his insertion of the name of grantor or grantee or description of the property does not pass the title. (*Upton* v. *Archer,* 41 Cal. 85 [10 Am. Rep. 266]; *Vaca Valley etc. R. R.* v. *Mansfield, supra; Harris* v. *Barlow,* 180 Cal. 142 [179 Pac. 682]. See, also, *Lund* v. *Thackery,* 18 S. D. 113 [99 N. W. 856].) In *Upton* v. *Archer, supra,* the court says: " . . . as it could not become the plaintiff's deed until the name of a grantee was inserted, that act could not be performed by an agent, in the absence of the plaintiff, unless his authority was in writing."

[4] The next point urged by appellant is that the evidence is insufficient to sustain the finding that she executed the power of attorney for the purpose of restoring respondent to full control over the properties and to complete ownership thereof, and thus to correct the mistake made by Neilson when he permitted the deeds to be recorded. Respondent and Neilson both testified that such was the purpose, and the only purpose, for which the power of attorney was executed. Appellant, it will be recalled, testified that she executed that document solely for the purpose of enabling her mother to handle the properties in the event that she, appellant, should be absent on a trip. If this were all, the problem would be simple indeed; for we then would be confronted with nothing more than a mere substantial conflict in the evidence, which clearly would not warrant an appellate court in disturbing the finding. It seems, however, that respondent testified that she saw the recorded deeds in the bank when she returned there on August 14, 1920; that it was upon that occasion that she discovered that her instructions not to record the instruments had been violated; and that it was then that Neilson made the suggestion, acceded to by appellant, that a power of attorney be given the mother to enable the latter to handle the properties as her own and to restore to her the right of complete ownership. But it was shown conclusively that the deeds, after having been recorded, were returned to the bank some days subsequent to the 14th of August. It also was conclusively shown that it was upon the last-mentioned date that the power of attorney was actually executed and

acknowledged by the daughter. Wherefore appellant argues that the reason assigned by respondent and Neilson for the execution of the power of attorney could not have been the true reason, and that, therefore, respondent's testimony to the effect that the power of attorney was given to enable her to treat the properties as though full and complete ownership had been restored to her is inherently improbable.

We are of the opinion that the evidence which shows that the recorded deeds could not possibly have been seen by respondent until some few days after the execution of the power of attorney, while tending to contradict the testimony given by respondent and her witness Neilson, did not so corroborate appellant's testimony respecting her reason for giving the power of attorney as to conclusively contradict that of respondent and Neilson, or impair the latter's testimony to such an extent as to compel the conclusion that a finding based thereon is not supported by credible testimony. There is printed in respondent's brief what purports to be an excerpt from a written opinion filed in the court below, wherein the learned trial judge gave it as his opinion that the testimony of respondent and Neilson to the effect that the deeds had been recorded and returned to the bank as early as August 14th, while evidently a mistake on their part, is not inconsistent with the inference that knowledge that the deeds were being recorded, or had been filed for record, was brought home to the parties on August 14th, and that such knowledge was the inducing cause for the execution of the power of attorney. We think this a fair inference which the trial court was warranted in deducing, and that it affords a complete answer to appellant's claim of inherent improbability in the testimony of respondent and Neilson respecting the reason for the execution of the power of attorney.

Appellant contends that the undisputed evidence in the case supports her plea of estoppel. It is claimed that, by signing appellant's name to the renewal notes and mortgages given at the time when the old mortgages matured, respondent not only recognized the existence of a mortgageable title in her daughter but imposed upon the latter personal obligations as a joint maker of the notes. Where-

fore it is claimed that respondent is estopped to assert the truth respecting the title to the properties. The claim clearly is untenable. [5] The facts necessary to be shown in order to call into exercise the principles of equitable estoppel are stated by Chief Justice Field in *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 367, as follows: " . . . *first*, that the party making the admission by his declarations or conduct was apprised of the true state of his own title; *second*, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; *third*, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge; and, *fourth*, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved." [6] The present case lacks several of these essential elements of estoppel. For instance, the evidence fails to show the existence of the second of the above enumerated essentials. There must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title—the effect of the estoppel being to forfeit his property and to transfer his enjoyment thereof to another. Here respondent, when exercising the power conferred upon her by her daughter to execute mortgages in the names of both of them,· did only that which must have been within the contemplation of the parties when the general power of attorney was given; and therefore the acts of respondent in executing the mortgages, so far as those acts affect the matter of *title*, can present no question of fraud or concealment, or negligence amounting to constructive fraud. And the fact that, by the execution of the notes in the names of both of them as joint obligors, respondent imposed personal obligations upon appellant could not have induced the latter to believe that the title was vested in herself and respondent as joint tenants. The imposition of such personal obligations was a thing quite apart from any question of title to the properties. It was not of itself an act which could have led appellant to believe that the title was other than the facts showed it to be, viz., a title vested entirely in the mother as the sole owner of the properties. In the next place, the third essential of estoppel mentioned by

Chief Justice Field is absent from the case. Appellant, who accompanied her mother on the visits to the bank and who had every opportunity to see and to hear all that was done and said upon those occasions, had every possible means for knowing the real state of the title. She knew all the facts, from which it follows, as a necessary legal conclusion, that no title passed out of the mother into appellant's grantor, Meng. Appellant, then, was not destitute of convenient and ready means of knowledge of the true state of the title, and she therefore could not have been deceived by any act of respondent. "The estoppel is removed by proof that the party claiming its existence, even though mistaken in regard to his rights at law, had notice of the actual state of the facts at the time he acted upon the representation, and this though the representation was made under oath." (Bigelow on Estoppel, p. 560.) "The estoppel does not apply where everything is equally well known to both parties." (Herman on Estoppel, sec. 957.) "Where the condition of the title is known to both sides, or both have the same means of ascertaining the truth, there can be no estoppel." (*Crary* v. *Dye,* 208 U. S. 521 [52 L. Ed. 595, 28 Sup. Ct. Rep. 360, see, also, Rose's U. S. Notes].) The same principle is announced in *Eltinge* v. *Santos,* 171 Cal. 278, 284 [Ann. Cas. 1917A, 1143, 152 Pac. 915]; *Leedom* v. *Ham,* 5 Cal. Unrep. 633 [48 Pac. 222]; *Holcomb* v. *Boynton,* 151 Ill. 294 [37 N. E. 1031]; *Estis* v. *Jackson,* 111 N. C. 145 [32 Am. St. Rep. 784, 16 S. E. 7]; *Sheffield Car Co.* v. *Constantine Hydraulic Co.,* 171 Mich. 423 [Ann. Cas. 1914B, 984, 13 N. W. 305]; and *Gjerstadengen* v. *Van Duzen,* 7 N. D. 612 [66 Am. St. Rep. 679, 76 N. W. 233].

[7] It next is contended that respondent's conduct amounted to a ratification of her deed to appellant's grantor. There is a well-defined distinction between ratification of a deed and facts constituting an estoppel of the grantor to deny its validity. (*Blood* v. *La Serena L. & W. Co.,* 113 Cal. 221, 226 [41 Pac. 1017, 45 Pac. 252].) And where, as in California, the mode of ratification is governed by statute, the distinction between the two doctrines often becomes an important consideration. By express statutory provision in this state, ratification of an agent's act can be made "only in the manner that would have been necessary

to confer an original authority for the acts ratified, or, where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof." (Civ. Code, sec. 2310.) As we have seen, it has been definitely decided in this state that under our statute of frauds the authority of an agent to insert in a deed any of the essentials of a valid conveyance, such, for example, as the name of the grantee, is required to be in writing. (*Harris* v. *Barlow, supra.*) It follows, therefore, that a ratification of Neilson's act in causing to be inserted descriptions of the properties and the names of respondent as the grantor and of Meng as the grantee could be made only in writing subscribed by appellant. There never was such a writing, and therefore there never was a ratification.

We have now considered all of the points raised by appellant with respect to parcels 2, 3, 4, and 5, and our conclusion is that as to those parcels the judgment should be affirmed.

### Parcel No. 1.

The facts respecting lot D in block 87 of the city of Santa Monica (referred to in appellant's brief as parcel No. 1) appear to be substantially these: The title to this lot was acquired some time after respondent had signed the blank deeds which she left at the bank with Neilson. Respondent caused the deed to this parcel of land to be made to herself and daughter as the grantees. It seems that prior to the acquisition of this lot respondent and her daughter were the owners, as joint tenants, of a parcel of land referred to by the witnesses as the "Highland property." There seems to be no question as to the daughter's rightful claim to title in this Highland property as a joint owner thereof with her mother. Respondent sold the Highland property. The deed thereto she executed in the names of herself and daughter as the grantors, signing the daughter's name as the latter's attorney in fact under the power of attorney already mentioned. With the proceeds from the sale of this property respondent bought the Santa Monica property (parcel No. 1), causing the title thereto to be conveyed to herself and daughter as joint tenants. This Santa Monica property is referred to by the witnesses as the "Fourteenth

Street property,'' or the ''Fourteenth Street house.'' Respondent testified: ''The Highland property we held as joint tenants, is the Fourteenth Street house.'' By this testimony respondent evidently meant that the ''Highland property'' had, in effect, been converted by her into the ''Santa Monica property.'' It is manifest that upon these facts appellant is the owner of at least some interest in or title to parcel No. 1, and that the judgment is erroneous in so far as it declares respondent to be the sole owner thereof and in so far as it purports to quiet the latter's title thereto as sole owner.

In view of the fact that the judgment should be affirmed as to four, and reversed as to one, of the parcels of land, the costs of appeal should be apportioned between the parties in as equitable a manner as seems practicable.

Those parts of the judgment which quiet respondent's title to, declare her to be the owner in fee simple of, and appellant to have no right, title, or interest in, the lots and parcels of land other than lot D in block 87 of the city of Santa Monica, and all parts of the judgment which relate to or affect the properties other than said lot D, are affirmed. That part of the judgment which quiets respondent's title to, declares her to be the owner in fee simple of, and appellant to have no right, title, or interest in, said lot D in block 87 of the city of Santa Monica, is reversed. The trial court is directed to retry the issues which involve the title to said lot D, and to adjudicate the respective rights of the parties in and to that lot. Appellant shall recover one-fifth of all amounts actually paid out by her in connection with the appeal and the preparation of the record for the appeal, including one-fifth of the cost of printing her briefs, if the cost of printing her briefs did not exceed one hundred dollars, and if it did exceed that sum then she shall recover twenty dollars for printing her briefs.

Craig, J., and Works, J., concurred.