[Civ. No. 326. Fourth Appellate District.—April 13, 1932.]

BANK OF AMERICA (a Corporation), Appellant, v. PACI-FIC READY-CUT HOMES, INC. (a Corporation), Respondent.

556

Harvey & Heard and T. N. Harvey for Appellant.

Andrew J. Copp, Jr., for Respondent.

THOMSON, J., *pro tem.*—This is an action to recover a balance due under a contract. The trial court rendered judgment for the defendant and plaintiff appeals from said judgment.

On April 2, 1928, respondent entered into a contract with the Southern California Edison Company by the terms of which respondent agreed to construct for said California Edison Company two houses and two garages at Vestal, California, and one house and one garage at Baileys, California. On April 9, 1928, E. R. Frey agreed with respondent to construct said buildings for respondent for a cash consideration, respondent to furnish the ready-cut materials. This agreement was in the form of two separate instruments, one relating to the work at Vestal and the other relating to the work at Baileys. Frey applied to appellant for a loan and a loan was made to him by appellant on June 12, 1928, appellant taking as security for the repayment of said loan, and any future loans, an assignment from Frey of said agreement relating to the construction work at Vestal. On June 25, 1928, this loan was paid and another loan of $1,000 was made by appellant to Frey, appellant keeping the same security. On July 31, 1928, this second loan was paid and a third loan of $1,000 was made by appellant to Frey. Said first and second loans were paid out of moneys which accrued under said Vestal contract. No notice of the second loan or the third loan was given to

respondent. Frey did not complete the work at either Vestal or Baileys, having ceased to perform on September 10, 1928, and respondent completed said work on or about October 15, 1928. Frey failed to pay the third loan and appellant sued respondent for the moneys claimed to be due to appellant under said assigned contract. Respondent filed an answer containing fifty-two separate defenses, including fifty-one counterclaims. These counterclaims, for convenience, may be grouped generally under three heads: (1) those relating to an indebtedness due from Frey to respondent at the time of the assignment of Frey's contract to appellant; (2) those relating to a claim against Frey for recoupment for moneys expended by respondent to complete Frey's contract on the Vestal property; and (3) those relating to a claim of recoupment for moneys expended by respondent to complete Frey's contract on the property at Baileys. Appellant was not notified of the claimed offset or recoupments until after said loans were made by appellant to Frey. Appellant and respondent had certain correspondence concerning the matter, consisting of five letters. The first letter, dated June 12, 1928, addressed to respondent by Samuel M. Crim, assistant vice-president of appellant bank, reads as follows:

"Gentlemen:

"We beg to enclose herewith copy of assignment today executed by Mr. E. R. Frey, in our favor, covering his subcontract with your good institution for the construction of jobs No. 1999, 2000-1-2.

"Will you please acknowledge receipt of the assignment and advise if it will be quite agreeable to remitting us the payments as they mature under said contract.

"Very truly yours,
"SAMUEL M. CRIM,
"Assistant Vice-President."

In reply to said letter respondent wrote the following letter to appellant on June 14, 1928:

"Gentlemen:

"In today's mail we are in receipt of your letter of June 12th enclosing assignment of subcontractor's agreement between E. R. Frey as sub-contractor and Pacific Ready-Cut Homes, Inc., Contractor, covering jobs 1999,

2000, 2001 and 2002. We note in your letter you ask us to acknowledge receipt of the assignment and advise if it will be agreeable for us to remit to you as the payments come due under our contract. The contract price of this job was $4580.88 from which we have paid Mr. Frey 1145.22 leaving a balance due him of $3435.66. Is it Mr. Frey's intention to have all of this balance remitted to you or are we merely to protect you to the extent of the $1000.00 mentioned in the assignment? There are no payments due at this time and we will protect you to the extent of $1000.00 you ask until we can straighten out the point above mentioned. Will you please advise us at once so that we can make the proper notation on our records and remit the entire balance to you if this is Mr. Frey's desire.

"The assignment apparently covers the point we have taken up with you, and our only reason in going to this length is in order that there can be no possibility of a misunderstanding between Mr. Frey, yourselves and this Company as to the ultimate payment of the balance due Mr. Frey.

"Very truly yours,
"PACIFIC READY CUT HOMES, INC.,
"By H. F. HOPKINS."

On June 15th, 1928, appellant addressed to respondent the following letter:

"Gentlemen:

"We beg to acknowledge receipt of yours of the 14th inst., and to advise that we would appreciate your recognizing the assignment to us as an absolute assignment covering all future payments until such time as we advise that the said assignment has been duly cancelled. This would permit us to make future loans to Mr. Frey should he have occasion to call on us.

"Promptly that Mr. Frey has liquidated his loan and has advised us that he will need no further accommodations which are to be secured by the assignment in question, we will advise you to that effect and will then release such future payments as may be provided for in said subcontract.

"Very truly yours,
"SAMUEL M. CRIM,
"Assistant Vice-President."

On June 21, 1928, respondent addressed to appellant the following letter:

"Gentlemen:

"Acknowledging your letter of June 15th relative to the assignment given you by Mr. Frey upon the money due him on the Edison jobs, we have made a note on our records and will remit all future payments to you until notified otherwise.

"Very truly yours,
"Pacific Ready Cut Homes, Inc.,
"By H. F. Hopkins."

The last of these five letters was addressed by respondent to appellant on September 7, 1928, and reads as follows:

"Gentlemen:

"Due to the fact that it takes considerable time for the Southern California Edison Company to pass their invoices for payment, and a lot more time before the vouchers are finally made up, we have not as yet received our final payment on the Vestal Jobs, and at present we are in communication with the Edison Company and with Mr. Frey over some additional cement work on these jobs, correct invoices for which must be in before final settlement is made.

"At this time we owe Mr. Frey approximately $1158, a check for which amount will be mailed to you just as soon as we receive final settlement from the Edison Company.

"This letter is written you at the suggestion of Mr. Frey, evidently for the purpose of apprising you as to the reason for the apparent delay.

"Very truly yours,
"Pacific Ready Cut Homes, Inc.,
"By H. F. Hopkins."

The contract which was assigned to appellant provided that in the event Frey abandoned the work at Vestal and respondent had to complete it, respondent had the right to charge the cost of such completion to Frey.

The right of respondent to recoupment of any moneys expended by it to complete the buildings at Vestal after Frey had abandoned the same is conceded by appellant, and the trial court has found that respondent did complete such buildings and found the reasonable amount expended

for said work. We are therefore not concerned with that item of recoupment.

There remain to be considered the first and third offsets above mentioned. Appellant makes three general assignments of error: First, that respondent is estopped from asserting Frey's indebtedness to it as a defense to appellant's claim under assignment of the Vestal contract; second, that the money paid by respondent to complete the Baileys contract is not a proper offset, counterclaim or recoupment against appellant's claim; and third, that the facts show that a novation was created between appellant and respondent and that this novation bars respondent from asserting claims against Frey as a defense to appellant's claim under the assignment of the Vestal contract.

■ With reference to appellant's first assignment of error, the general rule of law is that an assignee of moneys due under a contract takes an assignment of said contract subject to any and all rights to set-off and recoupment which the other party to the contract has against the assignor at the time or before such other party receives notice of said assignment. (Code Civ. Proc., sec. 368; Civ. Code, sec. 1459; 23 Cal. Jur., p. 265; *Machado* v. *Borges,* 170 Cal. 501, 502 [150 Pac. 351, 352]; *McKenney* v. *Ellsworth,* 165 Cal. 326, 330 [132 Pac. 75].) However, appellant contends that, notwithstanding this rule, the evidence in the instant case is sufficient to estop respondent from setting up the indebtedness of Frey in its favor, by reason of the letters sent by respondent to appellant above set out. Appellant refers particularly to the second letter, in which respondent said: "We will protect you to the extent of $1000.00 you ask until we can straighten out the point above mentioned. Will you please advise us at once so that we can make the proper notation on our records and remit the entire balance to you if this is Mr. Frey's desire"; and that portion of the third letter in which appellant requested respondent to recognize the assignment as an absolute assignment, as by so doing it would permit appellant to make future loans to Frey; also that part of the fourth letter in which respondent stated: " . . . we have made a note on our records and will remit all future payments to you until notified otherwise." Appellant also stresses the fact that at no time during the

period covered by this correspondence did respondent inform appellant of any counterclaim, offset or recoupment against Frey.

We are of the opinion that the doctrine of estoppel should not be applied to respondent's conduct in this case. Generally speaking, there are four elements essential to the application of the doctrine of estoppel: First, the party to be estopped must be apprised of the facts; second, he must intend that his conduct shall be acted upon, or his conduct must be such that the party asserting the estoppel had a right to believe that it was so intended; third, the party asserting the estoppel must be without knowledge, and without ready means of obtaining knowledge, of the true state of facts; and fourth, he must rely upon such conduct to his injury. (10 Cal. Jur., pp. 627, 637; *Biddle Boggs* v. *Merced Min. Co.*, 14 Cal. 279, 376; *Jones* v. *Coulter*, 75 Cal. App. 540, 550 [243 Pac. 487]; *Robbins* v. *Law*, 48 Cal. App. 555, 562 [192 Pac. 118].) A similar rule in California is set forth in the statute as follows: "Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission, be permitted to falsify it." (Code Civ. Proc., sec. 1962, subd. 3; *Ghio* v. *Cline*, 45 Cal. App. 262, 265 [187 Pac. 433].)

The original loan from appellant to Frey was made on June 12, 1928, before respondent had communicated with appellant in regard to the transaction and before respondent had any knowledge of the transaction. The making of this loan by appellant to Frey could not have been induced by anything said or done by respondent. On June 12, 1928, appellant wrote to respondent notifying it of the assignment. Respondent on June 14, 1928, wrote to appellant stating that the unpaid balance of the contract price under the terms of the assigned contract was $3,456.66 and that "there are no payments due at this time, and we will protect you to the extent of $1000.00 you ask until we can straighten out the point above mentioned." This must have related to the original loan of $1,000, as neither of the other loans had been made at that time. Respondents did afterward pay to appellant, out of

the accrued credits arising from the assigned contract, a sufficient amount to pay off this loan and also the second loan made by appellant to Frey. Respondent's letter of June 21, 1928, stated ''we have made a note on our records and we will remit all future payments to you until notified otherwise''. A reasonable interpretation of this statement under the circumstances of the case, we believe, is that respondent would remit such future balances as might become legally due to Frey or his assignee, after making such adjustments and deductions as the law authorized. These letters could not be construed to be a guaranty by respondent to appellant to pay Frey's debt to appellant. The letters from respondent to appellant were not sent at the time the original obligation was incurred by Frey and were not a part of the transaction by which Frey borrowed the money from appellant, nor was there any consideration moving to respondent. The evidence shows that the original loan was made by appellant to Frey before the letters were sent, and without any knowledge on the part of respondent, and that respondent never received any consideration or benefit from it. The correspondence, therefore, could not be considered in the nature of a guaranty on the part of respondent to answer for the debt of Frey. (Civ. Code, secs. 2787 and 2792.) The letter of September 7, 1928, addressed by respondent to appellant, was written several weeks after the third and last loan had been made by appellant to Frey, and, of course, could not have induced or influenced appellant to make such loan.

It is the general rule that, in order to work out estoppel by representations, the representations must be as to facts either past or present and not as to promises concerning the future. Promises as to future conduct or performance, if binding at all, must be binding as contracts. (*Rottmann* v. *Hevener*, 54 Cal. App. 474, 480 [202 Pac. 329]; 10 Cal. Jur., p. 630; 21 Cor. Jur., p. 1142.) In the instant case all of the representations of facts made by respondent to appellant are true, and the evidence shows that there was no fraud on the part of respondent, and that none of the representations or promises of respondent to appellant was made with any deliberate intent to induce or influence appellant to make any of the three loans made by appellant to Frey. With respect to respondent's promise

to remit to appellant future payments to become payable on the Frey subcontract, under the rule last stated, the doctrine of estoppel by representations would not apply to such a promise for the reason that, as already pointed out, this promise could not be considered as a contract, there being no consideration therefor.

■ Appellant argues that it was the duty of respondent to make known to appellant the Frey indebtedness and the Baileys subcontract existing at the time of the assignment and that an estoppel may arise from silence, as well as from words and conduct. However, such an estoppel arises "only where there is a duty to speak, and where the party upon whom such duty rests has an opportunity to speak and knowing that the circumstances require him to speak remains silent". (10 Cal. Jur., p. 631.) Appellant cites the case of *Verdugo Canyon Water Co.* v. *Verdugo,* 152 Cal. 655, 684 [93 Pac. 1021, 1033], in support of his point that it was the duty of respondent to inform appellant about the offsets and recoupments. However, that case is distinguishable from the case at bar for the reason that, in that case, the party against whom the estoppel was asserted had embarked on a common enterprise with the parties who claimed the estoppel, to use common property, for their common benefit, at their common expense, and the court held that, if he proposed or intended to reserve a part of that benefit to himself exclusively, then he owed a duty to his associates to inform them fully in regard to this reservation. As to the other question of estoppel determined in the Verdugo Canyon Water Co. case, and cited particularly by appellant, the Supreme Court quoted with approval the rule laid down in *Biddle Boggs* v. *Merced Min. Co., supra,* which holds that "the other party must have been without knowledge or the means of acquiring knowledge of the true state of the title". In the instant case appellant had the means of acquiring knowledge of the Frey indebtedness by inquiring of Frey or of respondent, but it did not use such available means. The vice-president of appellant bank, who made the loan to Frey, testified that he did not consider it essential to obtain this information and that he did not know at the time of making the loan that existing indebtedness from Frey to respondent could be offset against indebtedness from respondent to Frey or his assignee. It was the duty of appellant to use

such convenient and ready means to ascertain whether there were any offsets. (*Stern* v. *Sunset Road Oil Co.*, 47 Cal. App. 334, 345 [190 Pac. 651]; *Robbins* v. *Law*, 48 Cal. App. 555, 562 [192 Pac. 118]; *Smith* v. *Penny*, 44 Cal. 161, 166.)

█ Appellant next contends that the money paid by respondent to complete the Baileys contract is not a proper offset, counterclaim or recoupment against appellant's claim, because appellant had no knowledge of the Baileys contract at the time of the assignment of the Vestal contract and also because this claim did not mature until after notice of the assignment had been given to respondent. Appellant's lack of knowledge will not act as a bar to respondent's right of set-off or recoupment, for an assignee of such a contract "stands in no better position than his assignor, although he took the assignment for value and without knowledge of plaintiff's claim. . . . " (Code Civ. Proc., sec. 368; *Machado* v. *Borges, supra; Haskins* v. *Jordan*, 123 Cal. 157, 161 [55 Pac. 786].) The trial court allowed the amount of money expended by respondent to complete Frey's contract at Baileys after Frey defaulted, as an additional offset or recoupment against appellant's claim under the Vestal contract. Frey ceased work on the Baileys contract on or about September 10, 1928, subsequent to the date of the assignment in controversy. █ Appellant contends from that fact that, at the time of said assignment, respondent had no claim against Frey under this Baileys contract and, therefore, there was no indebtedness against Frey in favor of respondent, arising out of the Baileys contract, existing at the time of or before notice of assignment, and that appellant therefore took the assignment free from any such claim.

However, the trial court found "that said contract between the defendant and said E. R. Frey was in writing bearing date the said 9th day of May, 1928, but the writing comprised two separate instruments, one relating to the two houses and two garages at Vestal, California, . . . and the other writing referring to the house and garage at Baileys, California; that the two instruments together comprise but a single contract . . . and that it was not intended by defendant and said E. R. Frey that said separate writings should constitute separate and divisible contracts between themselves." In view of this finding, although Frey

assigned to appellant only that portion of the contract relating to the Vestal job, still that assignment would be subject to the recoupment arising out of the Baileys job, for we have then a case in which the appellant's cause of action on the assigned Vestal contract, and the right of respondent to recoup for the expense of completing the Baileys job, both grew out of the same subject matter and the same contract. Under such circumstances there could be no doubt of respondent's right of recoupment for expenses in completing the Baileys job. The appellant, as assignee, took subject to all equities and defenses between the original parties to the agreement existing at the time of the assignment. Those rights were not confined to those parts of the contract known to the assignee, but they included all equities and defenses covered by the entire contract (*Stern* v. *Sunset Road Oil Co.*, *supra*).

█ Appellant finally advances the theory that the assignment of the Vestal contract by Frey to appellant created a novation which bars respondent from asserting claims against Frey as a defense to appellant's claim on the assigned contract. Appellant argues that by virtue of the assignment by Frey to appellant of the moneys due under the Vestal contract and through the promise of respondent to pay such moneys to appellant, appellant was substituted as a creditor in place of Frey, thereby creating the kind of a novation provided for under subdivision 3 of section 1531 of the Civil Code of California, which provides that a novation may be made ''by the substitution of a new creditor in place of the old one, with intent to transfer the rights of the latter to the former''. We do not agree with appellant's contention. The transaction involved in this case has none of the characteristics of a novation. The only right which Frey had under the assigned contract was the right to collect money after he had completed certain construction work for respondent. It cannot be said that appellant bank intended to build the Vestal buildings. Frey was not released from his obligation to complete said buildings, nor did appellant release Frey from his obligation to pay the loan for which the contract was assigned as security. That appellant did not consider this assignment as a transfer of all of the rights of Frey under the contract is apparent because, in its letter of June 15, 1928, to respondent, it said

that, as soon as Frey paid his loan and advised appellant he would need no further accommodations secured by the assignment, appellant would "release such future payments as may be provided for in said subcontract". These facts clearly lead· to the conclusion that there was no novation and they distinguish the case at bar from the case of *Sprague ·Canning Machinery Co.* v. *Western Ranching Corp.,* 29 Cal. App. 374 [155 Pac. 1017], cited by appellant, wherein the defendant was definitely accepted as the debtor and the assignor was fully released from liability with the consent of all parties. The transaction involved in the case at bar is not a novation, but merely a simple assignment of a non-negotiable instrument for the purpose of securing the payment of a debt, and the assignment was taken by appellant subject to the recoupments and set-off claimed by respondent.

For the foregoing reasons we are of the opinion that respondent is entitled to the recoupments and set-off claimed by it, which aggregate a sum in excess of the amount sued for by appellant.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 11, 1932.