[Civ. No. 21182.    Second Dist., Div. One.    Mar. 28, 1956.]

BANCO MERCANTIL, S. A., (a Corporation), Respondent, v. SAULS INCORPORATED (a Corporation) et al., Appellants.

Dryden, Harrington, Horgan & Swartz and Jacob Swartz for Appellants.

McLaughlin & Casey and James A. McLaughlin for Respondent.

NOURSE (Paul), J. pro tem.*—By its complaint in this action, the plaintiff, a Mexican banking institution, seeks to recover as the holder in good faith upon an instrument executed by the defendant as drawer in favor of one Barbe as payee and upon the Bank of America as drawee. From a judgment in favor of the plaintiff, the defendant appeals.

*Assigned by Chairman of Judicial Council.

The relevant facts established by the evidence viewed in the light most favorable to the respondent are:

The defendant Sauls, Inc., was at the times hereinafter mentioned engaged in business as a commission agent in the marketing, for growers, of various agricultural products.

In January of 1952 it entered into a contract with Forest W. Barbe and R. W. Barbe (hereinafter called "Barbe") who were in possession of a parcel of land near Ensenada, Baja California, which they were desirous of planting to tomatoes. By the terms of the contract, Barbe agreed to plant 350 acres to tomatoes during the 1952 growing season, and designated defendant as his exclusive marketing agent, and to pay it commissions upon sales negotiated by it. Defendant agreed to advance to Barbe not to exceed $21,500 to be used by Barbe in preparing the land and in the planting and growing of the crop, and to further advance Barbe $1.15 for each lug of tomatoes upon receipt of original bills of lading and inspection certificates certifying the grade of the tomatoes. It further agreed to pay to Barbe the amount received by it from the purchasers after deducting commissions due and advances. Defendant did advance to Barbe substantially all of the sum of $21,500, and after the crop started to mature and shipments to be made, made advances to Barbe on the basis of $1.15 per lug. It did not however, in making these advances, demand strict compliance with the terms of the contract by demanding the receipt of bills of lading and inspection certificates, but made the advances upon the oral, and many times telephonic, representation by Barbe that the tomatoes had been inspected and loaded aboard railroad cars, and that bills of lading had been issued. In a number of instances defendant found that Barbe had misrepresented the number of lugs packed and shipped as to which he was entitled to an advance, and that the advances made by defendant were in excess of those to which Barbe was entitled.

The advances of $1.15 per lug made by defendant up to October 23, 1952, were made by checks drawn on the Bank of America and payable to "The Order" of Barbe; they also contained the word "check" in the text of the instrument. In October defendant caused a different form of check to be printed. This new form was identical, not only as to composition but as to color, with those formerly used, except that it read "pay to" rather than "pay to the order of." The word "check" was also omitted from the instrument. Its nego-

tiability was thus destroyed under both Mexican law and the law of California.

Between May 1 and November 15, defendant delivered to Barbe 33 checks. All but two of these were deposited by Barbe in his account in plaintiff's bank at Ensenada. Of these 33 checks, 10, beginning with a check for $1,000 dated October 23, were not made payable to order, but read "Pay to Forest W. Barbe." After the checks were made nonnegotiable in form, the defendant, instead of waiting until it was advised that the merchandise had been inspected and bills of lading issued to make its advances to Barbe on account of the shipment, would, when advised by Barbe that he was about to pick and pack tomatoes for shipment and of the amount to be picked, packed, and shipped, send or give Barbe a check in the nonnegotiable form with instructions that he was not to use the check until the shipment was actually made, and that if he did, payment would be stopped. All of the checks heretofore mentioned were cleared and paid in the ordinary course of business.

On November 15, 1952, defendant issued its check dated November 16, 1952, in the sum of $4,500 and on that day delivered it to Forest W. Barbe with instructions that he was not to use it until a certain number of lugs of tomatoes which were then in the process of being picked and packed had been inspected and shipped. On the same day Barbe took this check to the plaintiff bank and presented it to the manager of its Ensenada branch for deposit. The manager, before accepting the check, noticed that it was postdated and that it was not payable to order of bearer. He testified, however, that he believed that it was negotiable under the law of California. Parenthetically, we might state here that the evidence showed without conflict that if the check had been issued in Mexico and upon a Mexican bank, it would not have constituted a negotiable instrument because there was not in the text of the document a statement that it was a check. The manager accepted the check for deposit and credited the amount thereof to Barbe, who on that day and the following day withdrew the entire amount of the deposit. Several days later, before the check had been presented to the Bank of America, defendant stopped payment upon it, giving as its reason that it had not received the merchandise for which the check was issued.

In his testimony defendant Ginsburg, president of defend-

ant Sauls, Inc., testified that the reasons for ceasing to issue negotiable checks and issuing instruments such as the one sued upon here were that the growers needed funds as soon as possible after they had delivered the merchandise; that if a check was not issued until the merchandise had been delivered there would be from three to four days' delay in the grower's receiving his money; therefore he issued a nonnegotiable instrument to the grower with instructions not to use it in order that he might be protected if the grower did use it before delivering the merchandise for which it was issued, and so that if the merchandise was delivered there would be no delay in the grower's receiving his advances. He further testified that he did not entirely trust Barbe because of the fact that Barbe had in the past represented that he had inspected and shipped merchandise that had not in fact been inspected and shipped; that earlier in the year this did not make so much difference as a great deal of merchandise was being shipped and he could protect himself by deductions on future shipments; but that in October the season was getting late, there was danger of rain spoiling the crop, and he wanted further protection. He knew that Barbe was in need of money to pay his costs in picking, packing, and shipping, and that Barbe used the advances upon the merchandise delivered for that purpose. This in fact was the reason the contract provided for such advances.

After defendant had stopped payment upon the $4,500 instrument it issued a like instrument for the sum of $2,000 to Barbe without telling him that payment had been stopped upon the $4,500 check. This check, while nonnegotiable under the law of California, was negotiable in form under the law of Mexico. Barbe took this check to plaintiff but the manager refused to accept it for deposit, giving as his reason that he did not yet know whether the $4,500 check had cleared. This check was also postdated. Barbe then took the check for $2,000 to a businessman in Ensenada, who endorsed it, and upon the faith of this endorsement the bank accepted it for deposit and gave Barbe immediate credit for that amount. Defendant also stopped payment upon this check.

At no time did the officers of defendant communicate with plaintiff or did plaintiff seek to ascertain from it what claims, if any, defendant might have as against Barbe. There was no evidence to indicate that plaintiff had any knowledge of the terms of the contract between defendant and Barbe.

There was a conflict in the evidence as to whether or not the tomatoes on account of which the $4,500 check was issued were inspected, packed, and shipped. Barbe testified unqualifiedly that at the time the check was delivered to him the tomatoes had already been packed, inspected, and were on board the cars. Ginsburg testified that Sauls never received delivery of any of them; although it thereafter received several carloads of tomatoes which did not pass inspection and which, while shipped, had to be destroyed. The trial court did not make any finding upon the issue as to whether or not there was a failure of consideration for the check in that the merchandise was never delivered, although this issue was directly tendered by defendant's answer. The court did find, however, that Barbe was indebted to the defendant in a sum greatly in excess of the sum of $4,500.

The appellant now concedes that the question of the negotiability of the instrument in question is governed by the law of California, that under that law it is not nonnegotiable, and that the sole question to be decided here is as to whether or not the defendant is, as found by the trial court, estopped to assert against the plaintiff the offset that it was entitled to assert as against Barbe.

The trial court found a number of probative facts upon which its conclusion of law that the defendant is estopped is based. These facts may be summarized as follows: That the defendant knew that Barbe was in need of funds; that he would immediately upon the receipt of the check (for convenience we will denominate the $4,500 instrument a check) cash it at plaintiff's bank and would use the proceeds to pay his employees; that the defendant intended thereby to provide funds for Barbe's use in paying his employees in connection with the packing, harvesting, crating, and loading of tomatoes; that defendant intended to stop payment upon the check in the event it did not receive within the next day or so bills of lading and inspection certificates pursuant to instructions given at the time of the delivery of the check; that at the time of the delivery of the check the defendant knew the rainy season was approaching, that rain might cause serious damage to the tomato crop, and knew that the season for growing tomatoes was nearing an end and did not know whether the amount of the tomatoes they might ultimately receive from Barbe would be sufficient to enable it to make a profit out of the venture; that the defendant

did not wish to risk its money until it had received and sold such an additional quantity of tomatoes as to assure it a profit in the transaction; that the defendant conceived the plan of making the checks nonnegotiable in order to enable it to stop payment; that the defendant concealed from plaintiff that it might stop payment and concealed the fact that it had eliminated the words "the order of" from the instruments in order that it might safely stop payment; that the plaintiff had no knowledge of the intent of the defendant to stop payment and had no knowledge that the $4,500 evidenced by the check was not due and owing to Barbe; that the defendant's conduct in causing orders and checks for payment to be sent to Barbe over the months prior to November 17 had caused plaintiff to believe that checks drawn on the bank account in the name of defendant would be paid upon presentation; that neither the plaintiff nor its officers or agents knew that the $4,500 check was nonnegotiable under the laws of the state of California; that defendant at all times intended to conceal the fact of the nonnegotiability of such order from plaintiff and intended to cause plaintiff to cash the same for Forest W. Barbe in reliance upon the past conduct of defendant in not stopping payment on earlier checks.

We have concluded that certain of these findings are contrary to the evidence and that the facts found by the court do not support its conclusion that the defendant is estopped.

The trial court's finding that the defendant knew that Barbe would cash the check before he had delivered the merchandise against which it was an advance, and its finding that the defendant intended the plaintiff to rely upon defendant's past conduct in not stopping payment on similar checks, are entirely unsupported by the evidence.

The only testimony upon this matter was that given by Ginsburg and Barbe. Ginsburg testified that his express instructions to Barbe were not to use the check until the merchandise had been delivered. He also testified that he made the check nonnegotiable in form so as to be protected if his instructions were disobeyed, but there is no evidence that he knew they would be disobeyed. There was no evidence that any of the checks nonnegotiable in form which had been delivered prior to November 15 had been used by Barbe contrary to instructions. Barbe's testimony did not contradict that of Ginsburg except that it was his testimony that the merchandise had in fact been delivered at the time he received the check.

■ Four things are essential to the application of the doctrine of equitable estoppel. They are:

1. There must have been a misrepresentation or concealment of the matters of fact as to which the estoppel is claimed;

2. The party to be estopped must intend that the other party act upon the assumption of the truth of that fact;

3. The party claiming the estoppel must be ignorant of the true facts;

4. He must rely to his injury upon the conduct of the party to be estopped. (*Lusitanian-American Dev. Co.* v. *Seaboard Dairy Credit Corp.,* 1 Cal.2d 121, 128 [34 P.2d 139]; *Safway Steel Products, Inc.* v. *Lefever,* 117 Cal.App.2d 489, 491 [256 P.2d 32]; *Bank of America* v. *Pacific Ready-Cut Homes,* 122 Cal.App. 554, 561 [10 P.2d 478]; *General Motors Accept. Corp.* v. *Gandy,* 200 Cal. 284, 297 [253 P. 137].)

■ The first essential may be established either by proof of actual misrepresentation or by proof of careless and culpable conduct resulting in the deception of the party entitled to claim the estoppel (*Safway Steel Products, Inc.* v. *Lefever, supra*).

■ In order to prove the third essential, it is necessary that the evidence show not only that the party claiming the estoppel did not have actual knowledge of the true facts but that he did not have notice of facts sufficient to put a reasonably prudent man upon inquiry, the pursuit of which would have led to actual knowledge; the convenient or ready means of acquiring knowledge being the equivalent of knowledge (*Smith* v. *Penny,* 44 Cal. 161; *Dean* v. *Parker,* 88 Cal. 283 [26 P. 91]; *General Motors Accept. Corp.* v. *Gandy, supra,* pp. 297-298; *Nilson* v. *Sarment,* 153 Cal. 524, 531-532 [96 P. 315, 126 Am.St.Rep. 91]; *Jones* v. *Coulter,* 75 Cal.App. 540, 550-551 [243 P. 487]; *Merchants' Ad-Sign Co.* v. *Sterling,* 124 Cal. 429, 434 [57 P. 468, 71 Am.St.Rep. 94, 46 L.R.A. 142]; *Bank of America* v. *Pacific Ready-Cut Homes, supra*).

The evidence here was entirely insufficient to establish either the first or third essential elements.

The only representation made by the defendant to the plaintiff was that contained in the instrument itself. That instrument was concededly nonnegotiable in character and therefore could not constitute a representation that the defendant would not assert against anyone acquiring title to it any defenses that it might have against the payee Barbe.

■ By issuing a negotiable instrument, the maker holds out to the world that he will not assert against a holder in

due course any defenses that he may have against the payee. When, however, he issues a nonnegotiable instrument this representation is lacking, and he may assert any defenses that he has against a payee, even though the instrument which he issues purports to waive that right (*American Nat. Bank* v. *A. G. Sommerville, Inc.*, 191 Cal. 364, 369-370 [216 P. 376]). ██ The fact that plaintiff's manager accepted the instrument for deposit and gave Barbe credit for the amount under the mistaken belief that it was negotiable does not change the situation even if such mistake be considered one of fact. His mistake could not change the instrument from a nonnegotiable to a negotiable one, nor change the character of defendant's obligation under the instrument. The only contract that his mistake could affect was the contract of assignment entered into between plaintiff and Barbe; and we are not concerned with that contract. The manager's mistake could not constitute an element of estoppel in pais as against the defendant, for there is no evidence whatsoever that defendant's officers knew or had reason to believe that plaintiff's manager was ignorant of the true character of the instrument; and in the absence of such knowledge they had a right to assume that the manager of a bank which was engaged in handling foreign paper would know the essentials necessary to make instruments tendered him negotiable.

The fact that Barbe had on numerous former occasions negotiated paper both negotiable and nonnegotiable issued by defendant has no possible bearing upon estoppel in pais. There was nothing deceitful on defendant's part in honoring these former instruments, nor was there any evidence that Barbe in negotiating those instruments had done so contrary to instructions and without delivering the merchandise on account of which they were delivered to him, or any evidence that if he had acted contrary to instructions in those instances that the plaintiff knew of Barbe's deceit and therefore had a right to expect that despite his deceit defendant would waive any defense that it might have to the instrument in question.

██ Nor can the second element be established on the theory that the defendant was negligent in delivering the instrument to Barbe. In delivering it to him it relied upon his good faith in performing his obligations to it, but did not put him in any position to represent that the instrument was anything other than what it appeared on its face to be, to wit: a nonnegotiable instrument. If the plaintiff was

negligent in delivering this instrument to Barbe before it had received the consideration for it, plaintiff was equally guilty of negligence in cashing the check without inquiry. In doing so it, as had defendant, relied upon Barbe's honesty and good faith. And so the maxim stated in section 3543 of the Civil Code that "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer" has no application, for here if either party was negligent then they were equally negligent in that they both relied upon the good faith of Barbe and certainly plaintiff had the last opportunity to, by exercising care, avoid the loss.

■ The evidence fails to establish the third element. The evidence establishes without conflict that plaintiff had knowledge of facts sufficient to put it upon inquiry and that it had reasonable means of ascertaining the true facts.

Plaintiff's manager was not misled by the form of the check. Before accepting it for deposit and giving Barbe credit, he noticed that it was not payable to bearer or to order, and he must have known that it did not as a part of its text contain the word "check" and therefore, being educated in Mexican law,[1] must have known that it was non-negotiable under the laws of the country in which he was active in business. He knew that the check was postdated but accepted Barbe's explanation that that was a mistake on the part of Ginsburg. These facts were certainly sufficient to put the plaintiff upon inquiry and it had ample means of ascertaining the true character of the instrument and whether or not it would be honored. It could have made inquiry of defendant, and if it had done so would have learned that the check would not be honored but that the defendant claimed that the consideration for it had failed. It could have accepted it for collection only, and withheld credit upon it until it had cleared. Its failure to take any action to protect itself was not due in anywise to any representation made by the defendant. The fact that other like instruments had been honored when presented did not constitute any representation made by defendant to induce the plaintiff not to make inquiry as to the one in question here.

There was no confidential relationship existing between plaintiff and defendant and defendant was under no duty

---

[1] He was a graduate in law and practiced law for some years in Mexico before engaging in the banking business.

to advise the plaintiff that it might exercise the rights which the instrument it had issued entitled it to exercise; that is, to assert against an assignee of the instrument all equities and defenses which it had against Barbe (Civ. Code, § 1459). The very form of the instrument was notice of that fact.

If the facts here are sufficient to estop the defendants from asserting the nonnegotiability of the instrument in question, then any issuer of a nonnegotiable instrument may be likewise estopped, for by issuing the instrument they put it within the power of the payee to assign it, and that in substance is all that the defendant did in issuing the instrument in question.

The conclusion we have come to makes it unnecessary to consider whether or not the defendant Sauls Inc., is the alter ego of the defendant Ginsburg.

The judgment appealed from is reversed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied April 16, 1956, and respondent's petition for a hearing by the Supreme Court was denied May 23, 1956.